**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA**

|  |  |  |
|---|---|---|
| In re: Genentech, Inc., Herceptin (Trastuzumab) Marketing and Sales Practices Litigation | ) ) ) ) ) ) | MDL Docket No. 16-MD-2700<br><br>Document Relates to:<br>**All Cases** |

**STIPULATION AND ORDER REGARDING THE PRODUCTION OF
<u>ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS</u>**

This Production Stipulation and Order ("Production Stipulation and Order") governs the production of ESI and hard copy documents (collectively, "Document" or "Documents"), and specifies the form in which both parties and non-parties shall be required to produce Documents for use in the above-captioned case, and any actions that may be later consolidated with that case (the "Litigation"). This Production Stipulation and Order streamlines production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1. Nothing in this Production Stipulation and Order shall limit a party's right to seek or object to discovery as set out in applicable rules or to object to the authenticity or admissibility of any Document produced in accordance with this Production Stipulation and Order.

I.   GENERAL PROVISIONS

   A.   This Production Stipulation and Order governs productions made after the date of its entry by the Court.

   B.   The production of Documents in a manner consistent with the specifications set forth in this Production Stipulation and Order shall, absent exceptional circumstances, be sufficient to satisfy a producing party's obligation to produce its materials in reasonably useable form and as they are maintained in the ordinary course of business.

C. The parties shall not be obligated to collect, produce, or provide privilege logs for documents that are dated after the filing of the complaint (i.e., April 2, 2015).

D. Search Terms: The parties shall meet and confer to discuss the use of reasonable search terms and date restrictions to reduce the number of Documents for review and production. The fact that a Document has been identified in agreed-upon searches shall not prevent any party from withholding such Document from production on the grounds that the Document is not responsive, that it is protected from disclosure by applicable privilege or immunity, or that it is governed by applicable privacy law or regulation.

E. Redactions: The parties may use redactions to protect attorney-client privilege, attorney work-product, any other applicable privilege or immunity, protected health information, other personal information, and non-responsive information regarding other unrelated products.

F. Parent-Child Relationships: Parent-child relationships for all Documents (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document) must be preserved. Electronic documents attached to an email, or electronic documents and hard-copy documents attached or appended to a hard-copy document, are to be produced contemporaneously and sequentially immediately after the parent document. Non-relevant attachments may be excluded from production. All non-relevant attachments excluded from production shall be produced as a Bates-numbered placeholder.

G. Privilege Claims: For documents withheld from production pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity, the producing party shall provide one or more privilege logs in Excel or a

similar electronic form that allows text searching and organization of data. The privilege log shall be provided within 60 days following the production of documents from which the privileged documents are withheld.

    i. Every privilege log will contain the following information for each item not produced for reasons of privilege, to the extent providing this information will not destroy the privilege: (1) the name(s) of the person(s) who created and received the document; (2) the date on which the document was created and/or received; (3) a description of the nature of the document sufficient to enable the receiving party to assess the applicability of the privilege or protection; and (4) the privilege claimed. Legal personnel shall be identified as such by adding an asterisk after their names in the privilege log.

    ii. When there is a chain of privileged emails the producing party need only include one entry on the privilege log for the entire email chain reflecting the Bates number range of the chain, and need not log each email contained in the chain separately. The privilege log entry for the email chain need only provide the author, recipient, and copyee of the last in time email in the applicable privilege log field.

    iii. Neither party is required to include in their privilege logs (1) any privileged communications with outside counsel whose representation is relevant to the subject matter of this lawsuit or (2) redactions from produced documents, provided the reason for the redaction appears on the redaction label. The parties retain the right to request a more detailed basis for the claimed privilege supporting any redaction.

  H. TIFF Image Files: The parties agree that all Documents will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution, except as provided in section III.C. Page size shall be 8.5 x 11 inches unless, in the reasonable judgment of the producing party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (e.g., portrait to portrait and landscape to landscape).

  I. Text Files: Each Document produced under this Production Stipulation and Order shall be accompanied by a single, multipage text file containing all of the text for that item, not one text file per page. Each text file shall be named using the Bates number of the first page of the corresponding production item.

    i. OCR: The text for each hard copy document shall be generated by applying optical character recognition (OCR) technology to the scanned image of the document. The parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. The parties acknowledge, however, that due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.

    ii. ESI: The text of each ESI item shall be extracted directly from the ESI native file. To the extent that is not technically possible (e.g., the underlying native file is an image file), the text for each ESI item shall be generated by applying OCR to the native file under the provision above.

    iii. Redacted Text: The text file corresponding to a redacted Document may be generated by applying OCR to the redacted TIFF file under the provision above.

    iv. Foreign Language Text: The parties will make reasonable efforts to ensure that all technologies and processes used to collect, process, and produce the text of any Document—including all TIFF conversion and OCR processes, and the extraction of text from native files—preserves all foreign language text, punctuation, and other characteristics as they exist in the source native file.

A. Bates Numbering:

    i. Each TIFF image produced under this Production Stipulation and Order must be assigned a Bates number that must always: (1) be unique across the entire Document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given Document.

    ii. A producing party should not skip a Bates number or sets of Bates numbers in a production.  The producing party should provide a placeholder (e.g., gap sheet, dummy image) within the production where a gap in Bates number(s) would otherwise exist.  A producing party may use more than one Bates prefix, provided that, for all Documents produced using a given prefix, the Bates numbering runs sequentially and without gaps (unless indicated with a sheet or otherwise, as provided for in this paragraph) within that prefix.

    iii. The producing party will brand all TIFF images with its corresponding Bates number, using a consistent font type and size.  Parties will make

reasonable efforts to avoid obscuring any part of the underlying image with the Bates number.

A. Color: If a receiving party finds the black and white version of a Document insufficient, the receiving party may reasonably and for good cause request that the producing party provide a color image.

B. Confidentiality Designations: If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to the Document. The confidentiality designation should also be reflected in the "Confidentiality" field specified in Appendix 2.

C. Load Files: All productions will be provided with Concordance image and data load files as detailed in Appendix 1. The image load file must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of Documents referenced in a production's data load file should match the total number of designated Document breaks in the corresponding image load file for that production.

D. Fields:

   i. Documents shall be produced with all of the fields set forth in Appendix 2 to the extent that such fields can be reasonably extracted from the native file or created using an automated process.

   ii. Documents shall be produced with the following fields regardless of whether the fields may be populated automatically from the native file or created using an automated process: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Pg Count, (g) Confidentiality, (h) RecordType, and (i) Redacted.

        iii. All field information will be provided in a .DAT file consistent with the descriptions and the field names provided in Appendix 2.

## II. PRODUCTION OF HARD COPY DOCUMENTS

    A. Unitization of Hard Copy Documents: The parties will produce images of hard copy documents unitized to the extent the original documents appeared to be units in physical form, with attachments following parents. There is no requirement that a producing party objectively code hard copy documents to provide metadata fields not otherwise available.

## III. PRODUCTION OF ELECTRONICALLY STORED INFORMATION

    A. Types of ESI That Need Not Be Preserved or Collected: There is no need for the parties to preserve or collect ESI from the following sources absent good cause shown by the requesting party:

        i. Backup data files maintained in the normal course of business for purposes of disaster recovery;

        ii. Unallocated, slack space, deleted data, file fragments, or other data accessible by use of computer forensics;

        iii. Random access memory (RAM), temporary files, or other ephemeral data;

        iv. On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

        v. Data in metadata fields frequently updated automatically as part of the usual operation of a software application, such as last-opened or last-printed dates;

        vi. Telephone voice messages unless they are transcribed in the ordinary course of business;

vii. Personal computers and personal e-mail not regularly used for business activities;

viii. Structural files not material to individual file contents (e.g., .CSS, .XSL, .XML, .DTD, etc.).

ix. Operating system files, executable files, network, server, software application or system logs; and

x. Files on the NIST list.

B. Processing:

i. Auto date/time stamps: ESI items shall be processed so as to identify placeholders for automatically inserted dates, times, and file names (e.g., AUTODATE, AUTOFILENAME).

ii. Hidden text: Except as to the ESI produced in accordance with sections III.C-D., *infra,* ESI items shall be processed in a manner that maintains and displays hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

iii. Embedded Objects: Some files may contain embedded objects. Such objects shall be extracted and produced as separate files.

iv. Compressed Files: Compressed file types shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A. Production of Native Items:

i. The parties shall produce a Bates-numbered placeholder TIFF image of each spreadsheet-application file (e.g., MS Excel) and presentation file (e.g., PowerPoint) together with the full native version of each file.

      ii. The parties shall produce a Bates-numbered placeholder TIFF image of each audio/visual file together with the full native version of each file.

      iii. To the extent response to discovery requires production of discoverable electronic information contained in a database-application file (e.g., MS Access, SQL, SAP), in lieu of producing the database, the producing party shall produce a description of or reports from the database. The parties shall meet and confer about the need for additional reports or data that may be relevant.

    A. Requests for Other Native Files: Other than as specifically set forth in section III.C, *supra, a* producing party need not produce Documents in native format. If a party wants particular ESI produced in native format, and this Production Stipulation and Order does not require the production of that ESI in its native format, the requesting party bears the burden of showing that good cause exists for the producing party to produce the ESI in its native format. The requesting party will provide a specific Bates range for ESI it wishes to be produced in native format together with its statement of reasons for the request. Upon receiving such a request, the producing party shall either produce the requested ESI in native format or disclose to the requesting party why it is unreasonable or unnecessary to do so.

    B. Redaction:

      i. Where ESI items need to be redacted the ESI items shall be produced in TIFF with the OCR text of the redacted TIFF and with each redaction clearly indicated on the face of the TIFF.

      ii. If ESI redacted and partially withheld from production are audio/visual files, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unredacted portion of the content.

  C. De-duplication:

      i. The producing party need only produce a single copy of a particular ESI item.

      ii. Producing parties will globally de-duplicate ESI across the population of the party's records.

      iii. Each party will designate MD5 or SHA-1 as its default de-duplication algorithm to create and compare hash values for exact matches. The resulting hash value for each item shall be reflected in the HashValue field specified in Appendix 2.

      iv. Entire document families may constitute duplicate ESI. De-duplication shall not break up document families.

      v. All custodians who were in possession of a de-duplicated Document must be identified in the CustodianOther metadata field specified in Appendix 2.

IV. MISCELLANEOUS PROVISIONS

  A. Objections Preserved: Nothing in this Production Stipulation and Order shall be interpreted to require disclosure of irrelevant information or relevant information that is overly burdensome or is protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of Documents.

B.     Cooperation: The parties agree to act cooperatively and meet and confer. No party may seek judicial relief concerning this Production Stipulation and Order unless it first has conferred with the applicable producing or requesting party.

C.     Proportionality: The parties agree to negotiate in good faith regarding requests for and production of documents to ensure discovery is reasonable and proportional to the matter.

D.     Previously Produced Documents: The parties shall meet and confer about whether documents that were previously processed and produced in another litigation or in response to governmental or regulatory inquiries or investigations may be produced in the same format as they were produced in that particular litigation, inquiry, or investigation, without the need to incur additional costs to comply with the specifications described herein.  Nothing in this Production Stipulation and Order obligates a party to produce previously collected, processed, or produced Documents.

SO ORDERED.

DATED this 18th day of November, 2016.

_____
T. Lane Wilson
United States Magistrate Judge

**Appendix 1: Production Delivery Requirements**

General Instructions

1. A cover letter should be included with each production and shall include information sufficient to identify all accompanying media (e.g., CD, DVD, Hard Drive, or USB drive).

2. Data can be produced via FTP transfer or on CD, DVD, Hard Drive, or USB drive.

3. Label all media with the following:

    a. Case number,

    b. Production date,

    c. Bates range, and

    d. Disk number (1 of X, 2 of X, etc.), if applicable.

4. All productions should be checked and produced free of computer viruses.

Image Load Files

1. Image load (cross-reference) files should be produced in Concordance Image (Opticon) format.

2. The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC001.OPT).

3. The volume names should be consecutive (e.g., ABC001, ABC002, *et seq.*).

4. There should be one row in the load file for every TIFF image in the production.

5. Every image in the delivery volume should be cross-referenced in the image load file.

6. The imageID key should be named the same as the Bates number of the page.

7. Load files should not span across media (i.e., a separate volume should be created for each piece of media delivered).

Concordance Data Load Files:

1. Data load files should be produced in Concordance .DAT format.

2. The data load file should use standard Concordance delimiters:

    a. Comma - ¶ (ASCII 20);

    b.    Quote - Þ (ASCII 254);

    c.    Newline - ^ (ASCII 136).

3. The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.

4. All date fields should be produced in mm/dd/yyyy format.

5. All attachments should sequentially follow the parent document/email.

6. Use carriage-return to indicate the start of the next record.

7. Load files should not span across media (i.e., a separate volume should be created for each piece of media delivered).

8. The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (e.g., ABC001.DAT).

9. The volume names should be consecutive (e.g., ABC001, ABC002, *et seq.*).

10. If foreign language / Unicode text exists, the .DAT file shall be in UTF-8 or UTF-16 format where appropriate, consistent with section I.K.iv.

<u>OCR/Extracted Text Files</u>

1. OCR or Extracted Text files shall be provided in a separate \OCR\ directory containing Document level text files.

2. If Foreign Language/Unicode text exists, TEXT files shall be in appropriate UTF-8 or UTF-16 format, consistent with section I.K.iv.

## Appendix 2: Fields

| Field Name | Field Description |
|---|---|
| BegBates | First Bates number (production number) of an item. |
| EndBates | Last Bates number (production number) of an item.<br>**The EndBates field should be populated for single-page items. |
| BegAttach | First Bates number of first page of parent document in |
| EndAttach | Last Bates number of attachment range (i.e., Bates number of the |
| PgCount | Number of pages in the item. |
| Custodian | Name of person or non-custodial source from whose files the item is produced. |
| CustodianOther | Name of the person(s) or non-custodial source(s), in addition to including the Custodian, from whose files the item would have been produced if it had not been de-duplicated. |
| FileSize | Size (in kilobytes) of the source native file. |
| HashValue | The hash value of the file using the algorithm designated by the producing party. |
| NativeFileLink | Hyperlink path for documents provided in native format |
| FileExtension | Indicates file extension of source native file. |
| DateSent (mm/dd/yyyy) | Date email was sent. |
| LastModDate | Date item was last modified. |
| TimeSent | Time email was sent. |
| DateReceived | Date email was received |
| TimeReceived | Time email was received |
| To | The names and SMTP email addresses of all recipients that |
| From | The name and SMTP email address of the sender of the email. |
| CC | The names and SMTP email addresses of all recipients that were included on the "CC" line of the email. |
| BCC | The names and SMTP email addresses of all recipients that |
| DateCreated (mm/dd/yyyy) | Date the item was created. |
| TimeCreated (hh:mmAM/PM) | Time the item was created. |

| Field Name | Field Description |
|---|---|
| FileName | The filename of the source native file for an ESI item. |
| Subject | Any value populated in the Subject field of the source file metadata or document properties (e.g., subject line of email). |
| TextPath | Full relative path to the current location of the Document-level text file. |
| Confidentiality | Indicates if item has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| RecordType | To indicate "Paper," "Hard Copy," or "HC" if a hard copy document and "ESI" if it is an ESI item. |
| Application | Indicates software application that generated the ESI item |
| Redacted | User-generated field that will indicate redactions. "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Importance Ranking | Level of importance/sensitivity of messages. |
| MessageID | The unique message identifier generated by the source email. |
| ThreadID | The unique identifier for an email thread or conversation. |
| Title | Any value populated in the Title field of the source file metadata or item properties. |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties. |
| ProductionSet | Production set number / volume number. |
| ProductionDate | Production date. |
| ProducingParty | Producing party. |
| TimeZone | Time zone (e.g. Central Time, Pacific Time). |
| TimeZoneOffset | Time zone in relation to Zulu Time (e.g. -6.00, -8.00). |