**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| IN RE: GENENTECH HERCEPTIN | ) | |
| (TRASTUZUMAB) MARKETING | ) | MDL DOCKET NO. 16-MD-2700 |
| AND SALES PRACTICES | ) | ALL CASES |
| LITIGATION | ) | |

**OPINION AND ORDER**

Before the Court are outstanding issues raised and briefed in the following documents before the Court: the Parties' Second Joint Submission Regarding Preemption Discovery ("SJS") (Doc. 223); Plaintiffs' Supplement thereto ("Supplement") (Doc. 237); Defendant's Response to the Supplement ("Response") (Doc. 247); Plaintiffs' Reply in Support of the Supplement ("Reply") (Doc. 254); and Defendant's Surreply in Support of Supplement to the Parties' Second Joint Submission ("Surreply") (Doc. 262). After Defendant objected to the unilateral nature of the Supplement, the Court afforded opportunities for additional briefing in relation to the Supplement, which became ripe on September 5, 2017.

**I.     Custodial Files**

At this juncture, the remaining dispute over custodial files is whether Defendant must conduct searches of only the custodial files of the approximately twenty-one individuals it has identified as "most likely to have relevant information," or whether it must search a wider range of custodians as requested by Plaintiffs. Defendant contends this Court's prior discovery Orders, specifically those dated May 8, 2017 ("5/8 Order") and August 17, 2017 ("8/17 Order"), indicate that the custodial file search ordered by the Court was limited to the individuals identified by Defendant as most likely to have relevant information. Plaintiffs contend this limitation did not extend to custodial file searches based on the "included but not limited to" language in portions of the 5/8 Order more specifically related to requests for documents. The Court finds this was a legitimate dispute and, based on the totality of correspondence and information before the Court, finds no bad faith by either party.

In the Supplement and briefing related thereto, Plaintiffs have identified a specific number of custodians by name and explained the basis for requesting searches of their custodial files. The Court is now able to assess the scope and reasonableness of Plaintiffs' request and make specific findings as to each of the disputed categories of custodians. Rather than attempt to clarify the scope of prior Orders, the Court simply issues this Order as a supplement. Therefore, with respect to custodial file searches, this Order supplements prior Orders and provides specific parameters for such production.

### A. Custodians Identified by Plaintiffs Based on Review of Defendants' Documents

In the Supplement, Plaintiffs identified twelve individuals for whom they request custodial searches based on their review of Defendant's produced documents. (*See* Supplement, Doc. 237 at 7 (#59-70).) In the Reply, Plaintiffs identified one other such individual, Brunhilde Weber, for a total number of thirteen.

These thirteen individuals have been identified by Plaintiffs based on review of Defendant's produced documents, and this request cannot be classified as a fishing expedition. Plaintiffs have made an adequate showing that these specific searches are relevant to Phase I and proportional to the needs of Phase I. The Court further finds that the burden imposed upon Defendant, although it is substantial, does not outweigh its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). As this Court has explained in prior Orders, the Court now believes there is benefit to permitting Plaintiffs expansive discovery in Phase I. Although the Court narrowed some of Plaintiffs' interrogatories requesting identification of individuals to those most likely to have relevant information, the Court did not narrow document searches in the same respect and declines to do so now.

### B. Custodians Mentioned by Defendant's Counsel at Discovery Hearing and Compelled by Court's June 16, 2017 Order ("6/16 Order")

In the Supplement, Plaintiffs request custodial searches of thirty-nine additional individuals. (*See* Supplement, Doc. 237 at 6 (#20-58).) Defendant provided these names because it was compelled to do so by the Court in the 6/16 Order, and Defendant argues that this significant increase in custodial searches will cause great expense and delay without any likely benefit to Phase I. At some point early in the discovery process, Defendant identified these individuals as potentially having knowledge, and Plaintiffs contend this is sufficient itself to justify searches of their custodial files at this juncture in the litigation. The Court agrees with Plaintiffs. As explained above, the Court's ruling on document requests was distinct from the Court's ruling on identification of individuals. Further, now that the Court has before it specific numbers and identities of custodians, it is better able to analyze relevance and proportionality and concludes that Plaintiffs' requests are in compliance with the rules of civil procedure.

The Court therefore adopts Plaintiffs' proposal suggested in the Supplement, with some modifications. The Court orders Defendant to either: (1) search the custodial files of these thirty-nine individuals, or (2) provide a letter to Plaintiffs' counsel stating the basis for its conclusion that a certain individual's files do not have documents responsive to the document requests ruled upon by the Court in Part III.B-F of the 5/8 Order, (*see* Doc. 207, at 8-13), or that custodial files for that individual no longer exist. For any custodians identified by this letter, Plaintiffs may file a motion to compel if they wish to challenge Defendant's assertions.

### C. Overall Proportionality of Custodial Searches

With the above rulings, the maximum number of custodial file searches is around seventy (including the ones already agreed to and substantially completed by Defendant and the ones

compelled or potentially compelled by this Order). In a case of this magnitude and scope, and because Defendant's preemption motion opened the door to a wide scope of discovery, the Court finds this to be a reasonable number of custodial searches that is not overly burdensome and that is proportional to Phase I of the litigation. The Court has considered Defendant's contention that these searches will prolong discovery, result in a significantly greater expenditure of time and resources, and are unlikely to benefit the Court in resolving Phase I issues. Nonetheless, the Court believes these custodial searches, using the agreed search terms, are reasonable in scope and are being conducted upon a reasonable number of employees, given the prolonged nature of the relevant time frame and the size of Defendant's company. Further, Plaintiffs have identified specific relevant facts they seek to prove in order to respond to the preemption motion and note that, to date, Defendant has produced few documents from the 1997-2002 era.

This Order represents the entirety of Defendant's custodial file search obligations at this time. If Plaintiffs request any additional custodial file searches based on new information they learn, they must explain the need to Defendant during a meet and confer and then seek to compel the search if Defendant does not agree.

## II. Other Sources of Responsive Information

This dispute centers around Plaintiffs' lack of assurance that Defendant is searching all possible sources for relevant information. The Court ordered Defendant to search certain databases Defendant identified in the Parties' [First] Joint Submission Regarding Preemption Discovery (Doc. 130). In its Surreply, Defendant now agrees it will produce responsive material from the "active Complaints database and active Information Request database." (Surreply 6.) Plaintiffs continue to have concerns regarding search of "legacy systems" capturing complaints prior to 2011 and whether the databases originally identified by Defendant (and therefore listed in the 5/8 Order) represent the "universe" of sources.

At this juncture, Defendant has had more than adequate time to identify the "universe" of databases for Plaintiffs. The Court orders Defendant to inform Plaintiff via written letter: (1) what internal databases it has searched to date; (2) what, if any, "legacy systems" it has searched to date; and (3) whether there exist any other databases not identified in the 5/8 Order that may contain responsive information to Defendant's requests for production. This letter shall be provided no later than one week from the date of this Order. If Plaintiffs remain unsatisfied with Defendant's response or have reason to doubt the veracity thereof, they are permitted to raise the issues in a subsequent motion.

### III. Redacted Agreements Between Defendant and Patheon

Defendant did not substantively address this issue in its Response or Surreply. Instead, it simply stated the "Patheon agreements are already the subject of a separate motion to compel." (Response, Doc. 247 at 10.) Both Defendant and Patheon produced certain agreements with identical redactions. Defendant is a party to the agreements, is a party to the case, and is in the best position to litigate the redaction issue. The Court will not permit Defendant to use Patheon as a shield, and Defendant must independently explain why it produced redacted versions of the agreements.

Defendant's (and Patheon's) basis for the redactions appears to be the last clause of Paragraph 1(E) of the Stipulation and Order Regarding the Production of Electronically Stored Information and Hard Copy Documents ("Stipulation") (Doc. 142), which provides:

> The parties may use redactions to protect attorney-client privilege, attorney work-product, any other applicable privilege or immunity, protected health information, other personal information, **and non-responsive information regarding other unrelated products**.

(Doc. 142 ¶ I(E) (emphasis added).) However, based on the language preceding the redactions in provisions of the agreement before the Court – namely, Paragraphs 13.4.3, 19, and 19.3 of the

5

Master Toll-manufacturing Agreement – it appears the redacted information would be responsive to discovery requests compelled by the 5/8 Order. Therefore, with respect to all redactions in agreements between Defendant and Patheon, Defendant is ordered to submit the unredacted agreements in camera to this Court, with its justification for each redaction. These shall be submitted no later than two weeks from the date of this Order. If the parties reach an agreement as to these redactions, Defendant shall notify the Court within ten (10) days from the date of this Order.[1]

## IV. Extension of Phase I Deadlines

The Court anticipates that this Order, and particularly the custodial file searches, will necessitate a significant extension of the current deadlines. Plaintiffs cannot reasonably expect to obtain the relief requested in the Supplement and maintain current deadlines.

The parties are ordered to meet and confer and attempt to agree on proposed amended deadlines no later than ten (10) days from the date of this Order. This submission shall include deadlines for the letter explained in Part I.B and any resulting motions to compel. If the parties cannot agree, they shall file separate submissions regarding proposed amended deadlines.

**SO ORDERED this 12th day of September, 2017.**

**TERENCE KERN**
**United States District Judge**

---

[1] Simultaneous to this Order, the Court entered an Order ruling on Plaintiffs' Motion to Compel Non-Party Patheon Manufacturing Services, LLC to Comply With Subpoena Duces Tecum (Doc. 243). Therein, the Court rejected Plaintiffs' contention that Patheon lacked the ability to rely upon portions of the Stipulation because Patheon was a non-party. The Court also determined that the "responsiveness" question could be resolved between Plaintiff and Defendant without further expense to Patheon.