1          UNITED STATES DISTRICT COURT FOR THE

2               NORTHERN DISTRICT OF OKLAHOMA

3

4  IN RE:  GENENTECH HERCEPTIN       )
   (TRASTUZUMAB) MARKETING AND       )   Case No. 16-MD-2700-TCK-JFJ
5  SALES PRACTICES LITIGATION.       )   ALL CASES

6

7

8

9

10

11

12             TRANSCRIPT OF RECORDED PROCEEDINGS
                    NOVEMBER 30, 2017
13   BEFORE THE HONORABLE JODI F. JAYNE, MAGISTRATE JUDGE PRESIDING

14                    **MOTION HEARING**

15

16

17

18

19

20

21

22

23

24

25

```
 1                  A P P E A R A N C E S

 2   FOR THE PLAINTIFFS:              MR. DAVID E. KEGLOVITS
                                      MS. AMELIA FOGLEMAN
 3                                    MR. ADAM C. DOVERSPIKE
                                      Gable & Gotwals
 4                                    100 W. 5th Street
                                      Suite 1100
 5                                    Tulsa, OK 74103

 6   FOR THE DEFENDANTS:              MR. WILLIAM W. O'CONNOR
                                      Hall Estill Hardwick
 7                                    Gable Golden & Nelson
                                      320 S. Boston
 8                                    Suite 200
                                      Tulsa, OK 74103
 9
                                      MR. GABRIEL EGLI
10                                    MS. REBECCA JOY SCHWARTZ
                                      Shook, Hardy & Bacon
11                                    2555 Grand Boulevard
                                      Kansas City, MO 64108
12
                                      MS. ALICIA J. DONAHUE
13                                    Shook, Hardy & Bacon
                                      One Montgomery
14                                    Suite 2700
                                      San Francisco, CA 94104
15
                            **********
16

17

18

19

20

21

22

23

24

25
```

```
 1   PROCEEDINGS:

 2   -------------------------------------------------------------

 3          THE DEPUTY COURT CLERK:  This is case number 16-MD-

 4   2700-TCK-JFJ, In Re: Genentech Herceptin Marketing and Sales

 5   Practices.

 6      Counsel, please enter your appearance for the record.

 7          MR. KEGLOVITS:  On behalf of plaintiffs, Dave

 8   Keglovits, Amy Fogleman and Adam Doverspike.

 9          MR. O'CONNOR:  For the defendant, Alicia Donahue, Gabe

10   Egli, Becky Schwartz and Bill O'Connor.

11          THE COURT:  Okay.  Good to see all of you.  We are

12   here today on three motions filed by plaintiffs, they're

13   dockets 285, 286 and 293.

14      As an initial matter, I just want to state my view that

15   these motions were not filed prematurely or in any way -- and

16   are not in any way procedurally improper as intimated in some

17   of defendants' briefs.  Plaintiffs were just simply trying to

18   comply with my deadlines that I set.  So, to the extent that

19   there's any objections to the procedural propriety of those

20   motions, those are overruled and we're going to take all three

21   of them up today.

22      I understand that those deadlines may not have allowed the

23   time that you normally have to meet and confer and flesh those

24   issues out, but that was purposeful, so I didn't view anything

25   as procedurally improper about those motions.
```

1      That said, some time has obviously passed since they were

2   filed and I expect that circumstances have changed and you've

3   had additional time to confer on some of those issues, so my

4   goal today -- or my overall goal is to resolve the disputes as

5   they exist between you today, so I expect this hearing for you

6   to update me factually on what's occurred and if the issues

7   have been narrowed in any way.

8      And I expect that, plaintiffs, your requests have changed a

9   little bit in terms of time.  Obviously the November 3rd came

10   and went, I understand that, so to the extent you want to make

11   different additional requests, that's fine, and that's what

12   we're here today to do.

13      As far as a hearing order, I plan to hear arguments on the

14   motion to compel the privileged documents and the motion to

15   modify the ESI protocol together, hear from plaintiffs and then

16   hear from defendants, and then take up the motion to compel the

17   Standard Operating Procedures after that.

18      Does either party have a different proposal for how to

19   proceed?

20          **MS. DONAHUE:**  Not here, Your Honor.

21          **MS. FOGLEMAN:**  No, Your Honor.

22          **THE COURT:**  Okay.  Then plaintiffs, you're recognized

23   in support of the motions to modify the ESI protocol and

24   motions to compel the privileged documents.  And I -- good

25   morning.

In Re:  Genentech Herceptin (11-30-2017 Motion Hearing)          5

```
 1           MS. FOGLEMAN:  Good morning, Your Honor.  Amy Fogleman
 2  for the plaintiffs.  As --
 3           THE COURT:  Before you start, Ms. Fogleman, I'm
 4  sorry, --
 5           MS. FOGLEMAN:  That's okay.
 6           THE COURT:  -- I do plan to let -- I'm going to let
 7  you make your full argument, --
 8           MS. FOGLEMAN:  Sure.
 9           THE COURT:  -- but before you start, I just want to
10  start with some questions --
11           MS. FOGLEMAN:  Sure.
12           THE COURT:  -- to kind of get me going and make sure
13  I'm up to date.
14      If you could, I want you to tell me the productions,
15  besides production 21, that have already been re-reviewed, if
16  any.
17           MS. FOGLEMAN:  Besides?  Okay.  Yes, Your Honor.
18           THE COURT:  Does that make sense?
19           MS. FOGLEMAN:  Yes.
20           THE COURT:  And feel free to take a few minutes.
21  Because the way I'm seeing this is that regardless of whose
22  proposals I go with, if they've already been re-reviewed,
23  you're ready for me to rule on privilege issues.  So I want to
24  know for those --
25           MS. FOGLEMAN:  Right.  And I think --
```

1           **THE COURT:**  -- which are ready.

2           **MS. FOGLEMAN:**  -- I understand.  There have been

3    five -- we've been getting a weekly report.  The first one came

4    on October 31st, which was attached to the response brief, --

5           **THE COURT:**  Right.

6           **MS. FOGLEMAN:**  -- so that was a Tuesday.  I think

7    every Tuesday we've gotten a report as the results of their

8    re-review.  And I brought copies of those --

9           **THE COURT:**  Right.  Okay.

10          **MS. FOGLEMAN:**  -- for Your Honor, if you'd like.  I'll

11   hand those up.

12      So this is what we have.  The issue that we have is that --

13   well, first, let me give you a summary.  We've kind of tried to

14   summarize these into categories so you can see where --

15          **THE COURT:**  Sure.  So, this is production 21,

16   re-review?

17          **MS. FOGLEMAN:**  These are productions 21 and 28, I

18   believe.

19          **THE COURT:**  Okay.

20          **MS. FOGLEMAN:**  I don't think there's been any of the

21   next two -- wait, I handed up the wrong thing.  Sorry.  You're

22   going to get that in a minute, too.  Here's this.

23      So, the motion covers productions 21 and 28, which as you

24   can see were fairly large logs.

25          **THE COURT:**  Right.

1          **MS. FOGLEMAN:**  It also covered production 30 and 33.

2     Those were much smaller logs.  I don't believe, and I may stand

3     corrected on this, I'm not sure that their re-review has yet

4     gotten to 30 and 33.  I think that so far we've received I

5     think all of 28 and I believe most of 21.  I'm not sure if it's

6     been all of 21.

7          The problem is this hasn't really -- although we've

8     received these sheets that say what their calls are, you will

9     note that it's either "maintain" or it's "produce/produce

10    redacted," and we haven't actually received production of any

11    of these documents yet.  So --

12          **THE COURT:**  So you have not seen the redactions?

13          **MS. FOGLEMAN:**  No.

14          **THE COURT:**  Okay.

15          **MS. FOGLEMAN:**  And we haven't seen -- we don't even

16    know which of these are going to be produced in full and which

17    are going to be produce redacted, so we can't really tell yet

18    what the universe of the dispute has been narrowed down to.

19          **THE COURT:**  Oh, I see what you mean because of the

20    flash.

21          **MS. FOGLEMAN:**  Right.

22          **THE COURT:**  It might be produced in full, --

23          **MS. FOGLEMAN:**  Right.

24          **THE COURT:**  -- it might be produce redacted, and we

25    don't know if there's a dispute?

1     **MS. FOGLEMAN:**  Right.  And that's the vast majority of

2  these, because if you look at the exhibit -- the results of the

3  re-review process, 714 of the 863 that they have re-reviewed

4  have been designated as "produce, produce redacted."  But

5  again, we don't know if that's going to be, you know, if 700 of

6  those are produced in full or if they're all going to be

7  redacted except for one line.  We just don't know.

8     **THE COURT:**  All we do know from this then really is

9  that the maintain -- any that are maintained, you're going to

10  need a ruling on?

11     **MS. FOGLEMAN:**  Yes, because we have looked at the log

12  entries on the maintains and we still have issues with those

13  based on what we can tell from the log.

14     **THE COURT:**  Okay.

15     **MS. FOGLEMAN:**  So that would be the universe that we

16  know we will need assistance on is the 149.

17     **THE COURT:**  Okay.

18     **MS. FOGLEMAN:**  There's 51 that have been, by our

19  count, have yet -- we have not received the results of those,

20  of that review yet.  But then the 714, we just don't know.

21     **THE COURT:**  You just don't know.

22     Ms. Donahue, is the production for 21, is that re-review

23  almost complete or complete?

24     **MS. DONAHUE:**  Almost complete.

25     **THE COURT:**  Almost complete.  Okay.  And you're

 1  expecting maybe one more or two more rolling productions of a

 2  privilege log, or do you have any idea when those will be --

 3  when that will be completed?

 4            MS. DONAHUE:  I'm going to let Ms. Schwartz --

 5            THE COURT:  Okay.  Thank you.

 6            MS. DONAHUE:  -- answer because she's the --

 7            THE COURT:  Thank you.

 8            MS. SCHWARTZ:  The re-review is complete.  The

 9  production is almost -- that's the part that we're still

10  working on.  So, for 21 and 28, the re-review is complete.

11            THE COURT:  And they have these sheets --

12            MS. SCHWARTZ:  For all of them.

13            THE COURT:  -- for all of those?  Okay.  Understood.

14  Thank you.

15     So, with respect to those two, 21 and 28, regardless, let's

16  assume that I am going to let defendants keep doing the

17  procedure --

18            MS. FOGLEMAN:  Sure.

19            THE COURT:  -- that they want to do, those are ready

20  to be ruled on in terms of once they submit them --

21            MS. FOGLEMAN:  Once we have the documents.

22            THE COURT:  Once you have the documents.  Okay.

23            MS. FOGLEMAN:  Or once you have the doc- --

24            THE COURT:  Yes.

25            MS. FOGLEMAN:  -- when somebody besides Genentech has

1   the documents, either you have them to review --

2          THE COURT:  Right.  But anything that they're still

3   redacting, they're not going to give -- I mean, they're going

4   to give you redacted versions, but that will come --

5          MS. FOGLEMAN:  Right.

6          THE COURT:  -- in camera to me?

7          MS. FOGLEMAN:  And we would prefer -- I mean, I think

8   because this process has stretched out so long, we don't want

9   to agree to a process by which they produce redacted to us and

10  then we have to challenge -- I think what they're proposing is

11  they will produce redacted and then we'll have to go through a

12  meet-and-confer process on the redactions and then we submit

13  them to you.  We think -- I mean, the original production,

14  production 21, occurred on July 28th, so we're now four months

15  past that production date.  And by their own admission, over 82

16  percent of these documents they've reviewed should not have

17  been on that log.  They either should have been produced or

18  produced redacted.  And so we would prefer at this point -- we

19  think that the best course would be, unless they are willing to

20  produce the document to us in full unredacted, then we think

21  the most efficient process, although we hate to impose on Your

22  Honor, but we think the most efficient process would be to just

23  have you look at them.

24          THE COURT:  Okay.

25          MS. FOGLEMAN:  And if they want to propose their

1   redactions to you, we don't have an objection to that.

2          **THE COURT:**  That makes sense to me.  Thank you.

3          **MS. FOGLEMAN:**  Okay.  You're welcome.

4          **THE COURT:**  A few other questions.

5          **MS. FOGLEMAN:**  Sure.

6          **THE COURT:**  I think by handing this up, you've

7   answered one of them.  Let me look at this document.

8          **MS. FOGLEMAN:**  Sure.

9          **THE COURT:**  So, for docket -- okay.  So, up to -- so,

10  you have received privilege logs up through production 39, --

11         **MS. FOGLEMAN:**  Correct.

12         **THE COURT:**  -- is that correct, based on this?

13         **MS. FOGLEMAN:**  Yes.

14         **THE COURT:**  Okay.  Do you have anything that shows,

15  for the other productions that have happened, what their

16  deadline would be?

17         **MS. FOGLEMAN:**  What their deadline --

18         **THE COURT:**  Their privilege log deadline would be for

19  productions that -- well, have you received productions beyond

20  39?

21         **MS. FOGLEMAN:**  I see.  I see what you mean.  I believe

22  we have.  There have not been -- I don't have the numbers.

23         **THE COURT:**  Okay.  That's okay.

24         **MS. FOGLEMAN:**  We did go back and check because we

25  were trying to ensure we hadn't received these and we didn't

1    realize it, and the productions for the month of November were

2    significantly smaller than for past months.  We haven't yet, to

3    our knowledge, received anything from that production that's

4    due on December 15th, that first --

5              THE COURT:  Right.

6         MS. FOGLEMAN:  -- first production deadline, so

7    they've been relatively small productions.  I would think that

8    those -- I mean, I can't speak for them but I would not

9    anticipate there would be big logs associated with those.

10             THE COURT:  Okay.

11        MS. FOGLEMAN:  And I don't know the dates, but there

12   have not been very many is, I guess, the answer.

13             THE COURT:  What I'm getting at is if I reduce the

14   time --

15        MS. FOGLEMAN:  Right.

16             THE COURT:  -- for their privilege logs, --

17        MS. FOGLEMAN:  Right.

18             THE COURT:  -- I want to know if I'm giving them two

19   days --

20        MS. FOGLEMAN:  Oh, I see what you mean.

21             THE COURT:  -- from the date I enter my order, --

22        MS. FOGLEMAN:  I see what you mean.

23             THE COURT:  -- you know, that would be unfair to say.

24        MS. FOGLEMAN:  Sure.

25             THE COURT:  So, at some point --

1           **MS. FOGLEMAN:**  Yes.

2           **THE COURT:**  -- I might need to see those.

3           **MS. FOGLEMAN:**  Sure.  We can get that information for

4    you, --

5           **THE COURT:**  Yeah.

6           **MS. FOGLEMAN:**  -- for sure, and they may know it off

7    the top of their heads.

8           **THE COURT:**  Okay.  That's fine.

9           **MS. FOGLEMAN:**  Okay.

10          **THE COURT:**  Did you go forward with the depositions of

11   Dr. Lynn or Mr. Swisher?

12          **MS. FOGLEMAN:**  We did go forward with the deposition

13   of Dr. Lynn last week in Washington.

14          **THE COURT:**  Okay.

15          **MS. FOGLEMAN:**  Mr. Swisher is -- there were scheduling

16   issues involved in scheduling his deposition.  He is currently

17   scheduled for January 31st.

18          **THE COURT:**  Okay.  Do you plan, if you know, to depose

19   the other three first priority custodians, which is Nolden,

20   Brunhilde, and is it Panton?  Or if you've prepared --

21          **MS. FOGLEMAN:**  Yeah.

22          **THE COURT:**  -- to discuss that today.

23          **MS. FOGLEMAN:**  I will defer to Mr. Keglovits on that.

24          **MR. KEGLOVITS:**  Mr. Nolden and Ms. Webber, I believe,

25   is --

```
 1            THE COURT:  Oh, that's her first name.  Sorry.  Yeah.

 2         MR. KEGLOVITS:  -- do not live in the United States.

 3            THE COURT:  Right.

 4         MR. KEGLOVITS:  We have asked Genentech whether there

 5    are additional hoops we are going to have to go through to

 6    procure their depositions to try to build some lead time.  We

 7    haven't heard yet from them what their position on that will

 8    be.  And, of course, we want to see these documents --

 9            THE COURT:  Sure.

10         MR. KEGLOVITS:  -- to make a final call on whether a

11    trip to Switzerland is really warranted.

12            THE COURT:  Okay.  Thank you.

13         MS. FOGLEMAN:  And, Your Honor, I just note that

14    those -- because those are custodians who are in that first

15    tranche, that December 15th, so if we stick with the 60 days,

16    then we don't get a privilege log on them until February 13th.

17            THE COURT:  That's what I'm trying to decide; if you

18    know deposition dates, I'm trying to kind of work backwards

19    from those, --

20         MS. FOGLEMAN:  Right.

21            THE COURT:  -- but you obviously don't know those yet

22    and --

23         MS. FOGLEMAN:  Right.

24            THE COURT:  -- you want to see the documents first.

25         MS. FOGLEMAN:  Yeah.
```

1          **THE COURT:**  That was what that question was geared at.

2          **MS. FOGLEMAN:**  Sure.

3          **THE COURT:**  The first priority production will occur

4  by the interim deadline of December 15th.  So, in your view,

5  when would you need the privileged documents -- when would you

6  need rulings --

7          **MS. FOGLEMAN:**  Rulings --

8          **THE COURT:**  -- on those privileged documents in order

9  to depose anybody who's left of those custodians?  You don't

10  know yet whether you're --

11          **MS. FOGLEMAN:**  Right.

12          **THE COURT:**  -- deposing those, but I'm trying to get a

13  time frame.

14          **MS. FOGLEMAN:**  Understood.  Understood.  So your

15  question is when do we need the log or when do we need rulings

16  on documents --

17          **THE COURT:**  Rulings.

18          **MS. FOGLEMAN:**  -- that are yet to be produced?

19          **THE COURT:**  Well, -- okay.  You've got December 15th.

20          **MS. FOGLEMAN:**  Right.

21          **THE COURT:**  Let's say you get 60 days, --

22          **MS. FOGLEMAN:**  Then that puts you to --

23          **THE COURT:**   -- that would put it to --

24          **MS. FOGLEMAN:**  -- February 13th.

25          **THE COURT:**  -- February 15th, and then at least at a

1   minimum a month for rulings, --

2          **MS. FOGLEMAN:**  Right.

3          **THE COURT:**  -- re-review.

4          **MS. FOGLEMAN:**  Right.  I mean, to give you an example,

5   what we've -- I mean, the process that we've used here is

6   unfeas- -- is not feasible because, you know, the production --

7   the first production that has a log occurred on July 28th --

8          **THE COURT:**  Right.

9          **MS. FOGLEMAN:**  -- and now it's been over four months

10  and we haven't seen a single document from that log.  So,

11  clearly, the four months is too long if you're talking about a

12  production that occurs on --

13         **THE COURT:**  December 15th.

14         **MS. FOGLEMAN:**  -- December 15th.  So, I think we

15  would -- we would, you know, -- that's why we propose the 15

16  days.

17         **THE COURT:**  Okay.

18         **MS. FOGLEMAN:**  I mean, we think that's workable.  And

19  the context, if you look at this exhibit that has the eight

20  logs on it that they've produced so far, you know, and they

21  mention this in their briefs, they're very forthcoming, that

22  the first two logs were likely going to be the largest logs,

23  and they have been.  I mean, since that time, we're talking 18

24  entries, 64 entries, 17, which, if you will notice, they took

25  62 days on that one because the 60th day fell on a Saturday.

1  So I calculated that on the calculator, because I could not do

2  it in my head, and I determined that that was 3.5 days per

3  entry, and clearly they don't need that long.  I mean, they

4  will tell you they were just trying to prioritize.

5      So, I guess our point is we think the 15 days is feasible.

6  If they get to a production that has 10,000 documents on the

7  privilege log, they can always come to the court and seek

8  relief on that one, but we think these issues need to be teed

9  up as quickly as possible so that we can get them resolved.

10  And we're hopeful that the logs will continue to get smaller

11  like this so that we're not dealing with -- you know, we're not

12  having that many things to fight over, and if there is an

13  in-camera review necessary, it's not that onerous.  But we just

14  need to have a procedure in place that will get these things

15  kind of moving along a little more efficiently.

16      I don't know if I answered your question.

17          **THE COURT:**  You did.

18          **MS. FOGLEMAN:**  I guess the answer is we just need them

19  as quickly as we can get them.

20          **THE COURT:**  You fully answered my question.

21          **MS. FOGLEMAN:**  Okay.

22          **THE COURT:**  And that's all of them --

23          **MS. FOGLEMAN:**  Okay.

24          **THE COURT:**  -- so you can now please feel free to

25  proceed --

1              **MS. FOGLEMAN:**  Okay.  No, I mean I think --

2              **THE COURT:**  -- with your argument.

3              **MS. FOGLEMAN:**  -- I think your questions have covered,

4    you know, --

5              **THE COURT:**  Okay.

6              **MS. FOGLEMAN:**  -- pretty much my presentation.  Let me

7    just flip through my notes real quickly, but I think you've hit

8    the highlights.

9        I guess what I would urge the court is we really do have

10   these three buckets and I think you recognized these in your

11   questioning, but we have the issues from the four logs that are

12   currently briefed in the motion, we have the four logs that

13   have come in since the motion was filed, which, again, doesn't

14   have that many documents.  And I would just note that the log

15   for production 37, although it says 173 documents, based on the

16   description in the log, 74 of those seem to be the same

17   document.

18             **THE COURT:**  Which number was that?

19             **MS. FOGLEMAN:**  That is the privilege log for

20   production 37.

21             **THE COURT:**  Okay.

22             **MS. FOGLEMAN:**  It says 173 documents on the log but

23   the last 74 entries have exactly the same description --

24             **THE COURT:**  Okay.

25             **MS. FOGLEMAN:**  -- so I think they're probably multiple

```
 1   copies of the same one.  So that's the second bucket is this
 2   interim four.  And then, of course, the third bucket is future
 3   logs to come, which we don't know what those are at this point.
 4        So, you know, we would just urge Your Honor to establish a
 5   procedure where they have to get us the logs.  We would propose
 6   15 days.  We think that's doable.  Again, if there's extreme
 7   circumstances, you know, they can always ask for more time.
 8   And then we also would like some kind of procedure in place
 9   where, once we've sent the deficiency letter, you know, then
10   either they have to turn them over or we have to -- you know,
11   we don't want to have to go through a full briefing cycle on
12   each of these unless there's a different legal issue, and so
13   far we've only identified these two issues.  So, we'd like to
14   be able to have some kind of expedited procedure to get them --
15   to get any disputed documents to Your Honor and get a ruling on
16   those, or whatever procedure you want --
17             THE COURT:  Sure.
18             MS. FOGLEMAN:  -- to put in place.  We just don't
19   think four months is going to work going forward.
20             THE COURT:  Do you think a motion to compel procedure
21   would work, meaning not allow any -- from your perspective, --
22             MS. FOGLEMAN:  Right.
23             THE COURT:  -- would you propose no re-review, you get
24   a privilege log, no re-review by them, you just file your
25   motion to compel the ones that you --
```

1          MS. FOGLEMAN:  Right.

2          THE COURT:  -- dispute.  Would that be a workable

3    procedure from your perspective?

4          MS. FOGLEMAN:  Yes.  I mean, I think we --

5          THE COURT:  Perhaps where they --

6          MS. FOGLEMAN:  -- would even accept if we would send

7    them a letter, you know, saying we would challenge -- because

8    we haven't, and although it may seem like it, we haven't

9    challenged every document on their logs.  I think the

10   original -- the first four logs had about 1,100 documents on

11   them and we challenged -- there was 1,120 documents and we

12   challenged 914.  So, you know, we would send them a letter and

13   then they would have, you know, a couple of days if they wanted

14   to do a quick re-review, and we're not talking about one of

15   these five-week re-reviews, but if you wanted to give them like

16   three days to look at them and make a decision if they're going

17   to just turn some over, maybe they inadvertently slipped

18   through on the log, and then have them submitted to you.

19         THE COURT:  Wouldn't that be pretty similar to you

20   just filing your motion to compel and then, --

21         MS. FOGLEMAN:  That's true.

22         THE COURT:  -- if I gave them 10 days to respond, they

23   could --

24         MS. FOGLEMAN:  That's true.  Then they could withdraw.

25         THE COURT:  -- quickly re-review and withdraw?

1          **MS. FOGLEMAN:**  Yeah, I like your idea better.

2          **THE COURT:**  I'm just considering these things.  I

3    don't know yet what is going to make the most sense.

4       I have one other question for you on the substance of the

5    attorney-client privilege --

6          **MS. FOGLEMAN:**  Sure.

7          **THE COURT:**  -- arguments.  Can you explain to me a

8    little bit about the ESI protocols requirement on listing --

9    there's a dispute in your briefs where --

10          **MS. FOGLEMAN:**  Sure.

11          **THE COURT:**  -- it only requires you to list the

12    last --

13          **MS. FOGLEMAN:**  Yes.

14          **THE COURT:**  -- in the e-mail chain --

15          **MS. FOGLEMAN:**  Yes.

16          **THE COURT:**  -- and I want to make sure I understand

17    your arguments on when I get to be reviewing -- when I start

18    reviewing these --

19          **MS. FOGLEMAN:**  Sure.

20          **THE COURT:**  -- documents for attorney-client

21    privilege.  Explain to me that process --

22          **MS. FOGLEMAN:**  Right.

23          **THE COURT:**  -- and how you view it.

24          **MS. FOGLEMAN:**  The way we view that process is I think

25    what the protocol says is in a chain of privileged e-mails, and

1    I can find that language if --

2          THE COURT:  I have it.  I have it.

3          MS. FOGLEMAN:  -- it's in -- we quoted it in the

4    brief.

5          THE COURT:  Yeah.

6          MS. FOGLEMAN:  So our position would be as if every

7    e-mail in the chain is privileged, then you can just log the

8    last one, but that doesn't mean that every e-mail in the chain

9    is privileged by virtue of the fact that one of the e-mails in

10   the chain is privileged.

11         THE COURT:  Okay.

12         MS. FOGLEMAN:  If that makes sense.  We think that if

13   every e-mail -- if there are five e-mails and every single one

14   of them on their own would qualify for protection under the

15   privilege, then you don't need to log all five of them, you can

16   just log the last one, but that doesn't mean that anything in

17   that chain is privileged just because one of them is.

18         THE COURT:  Ms. Schwartz or Ms. Donahue, whoever is

19   going to argue, I want you to be prepared to talk about that.

20   Not now, but when -- when it's your turn.

21      Okay.  Ms. Fogleman, do you have anything else you would

22   like to add to that?

23         MS. FOGLEMAN:  I don't, unless you have anymore

24   questions, Your Honor.

25         THE COURT:  I don't.

1          **MS. FOGLEMAN:**  Okay.  Thank you.

2          **THE COURT:**  Thank you.

3      You're recognized, --

4          **MS. DONAHUE:**  Good morning, Your Honor.

5          **THE COURT:**  -- Ms. Donahue.  Thank you.

6          **MS. DONAHUE:**  I'm going to take a stab at this.  First

7  of all, I want to thank you very much for rescheduling for me

8  the hearing.  I really appreciate it.  I wanted to make sure I

9  could be here because these are important issues for us, but I

10 really appreciate you accommodating me, so thank you.

11         **THE COURT:**  We accommodate when we can.

12         **MS. DONAHUE:**  Thank you.

13     I will take a stab at some of this but there's a good

14 likelihood that you'll be hearing from others, as well.

15         **THE COURT:**  Okay.

16         **MS. DONAHUE:**  So, let me just kind of set the stage a

17 little bit on the issue of the privilege logs.  We have done a

18 total of, I think, 55 productions now, and 11 of those are, you

19 know, have had some privilege logs logged with them after

20 production.  So, I just wanted to make sure, you know, that

21 it's clear that we are not overusing the privilege or asserting

22 the privilege.

23     In the beginning, and what really has caused the re-review,

24 is the fact that during the time of the first two productions

25 we were working in a pretty hectic pace, you know, and I don't

1    need to go through the procedure of how this happens, so, yes,

2    there were some overassertions of the privilege, and we've

3    corrected for those, we've re-reviewed, and I think the numbers

4    that Ms. Fogleman gave you are correct.  We're down to, you

5    know, 78 documents that may or may not be in dispute at this

6    point.  So I think the cycle has taken care of itself in terms

7    of, you know, will there be a whole lot more of disputes on

8    privilege issues, and I don't think so.

9        In terms of their request for you to look at, you know, the

10   remaining assertions, you know, if that's how the court would

11   like to handle it, we're certainly not going to weigh in on

12   whether you should or shouldn't.  If you would like the

13   meet-and-confer process to be over on those once they get the

14   documents and you just want to do it on your own, obviously

15   that's your prerogative.

16       On the timing issue, I'm going to let Mr. O'Connor address

17   that.  But otherwise, do you have any questions for us on some

18   of the substantive issues in regard to the privilege?

19           **THE COURT:**  Well, let me make sure I understand what

20   it is that you would want in your ideal world.  You want 60

21   days to produce the privilege log after the production is made,

22   and then you want a chance to re-review challenges at a pace of

23   approximately 100 entries per week, and then plaintiffs move to

24   compel any remaining documents that are in dispute, and then I

25   conduct the privilege review.  Is that accurate?

1          **MS. DONAHUE:**  Pretty accurate.  In regard to the

2     timing, I mean, Mr. O'Connor can address it further, but I

3     think, you know, we would agree that in terms of tranche 3, a

4     15-day time period on that particular, you know, to get the

5     privilege log on that last production, that last tranche, is

6     probably reasonable given the timing issue.  Other than that,

7     you know, the 60 days, you know, I think we could reasonably

8     reach some form of agreement for less than 60, but 15 is, I

9     think, a little overly burdensome on us given all the other

10    things we have to do.

11         I mean, we're currently reviewing and collecting on over 50

12    custodians.  Since the last hearing, we've responded and

13    reviewed in excess of 900 documents.  We've just gone into

14    three discovery motions, we're responding to a third set of

15    discovery, we've defended a deposition of one of our experts

16    and the other one coming up.  So, to add a 15-day deadline for

17    us to review -- I mean, to get them our privilege log, we would

18    consider burdensome.

19         You know, what I was going to suggest or Mr. O'Connor was

20    going to suggest was 45, you know.  I mean, understanding that

21    there is a timing constraint on them, and we get that, but to

22    then put it overly back onto us, there's got to be a happy

23    medium somewhere.  15 for tranche 3, we would agree to, but,

24    you know, --

25         **THE COURT:**  Okay.

1          **MS. DONAHUE:**  -- their 15 for everything else is

2  really, I think, just adding to already very, very, very

3  overloaded discovery.

4          **THE COURT:**  Are there any productions that you think

5  will be as large as productions 21 and 28?

6          **MS. DONAHUE:**  I don't think so.

7          **THE COURT:**  Okay.

8          **MS. DONAHUE:**  Is that accurate, Dave, do you think?

9          **MR. KEGLOVITS:**  I think that's true.  I mean,

10  obviously we don't have a lot of insight into tranches 2 and 3

11  yet, Your Honor.

12          **THE COURT:**  Yeah.

13      No, I don't have any other questions for you, --

14          **MS. DONAHUE:**  Okay.  Thank you.

15          **THE COURT:**  -- Ms. Donahue.

16          **MR. O'CONNOR:**  Good morning.

17          **THE COURT:**  Good morning.  Mr. O'Connor, you're

18  addressing the timing -- the motion to modify the ESI protocol?

19          **MR. O'CONNOR:**  Yes.

20          **THE COURT:**  Okay.

21          **MR. O'CONNOR:**  Yes.  And some of the related issues.

22  I really -- this ESI protocol was negotiated over an extended

23  period of time.  There was a suggestion in their brief of some

24  prejudice when they proceeded with Dr. Zamiri's deposition and

25  then received the privileged document list afterwards.  Well,

1  everybody's aware of the schedule.  There's no -- they just

2  said admittedly that they understood the risk when they took

3  Dr. Lynn's deposition on November 20th, five months before

4  discovery is even over.  So, they understood the risk then,

5  too, and there was never a question to us or ever an issue

6  presented until early October that there was some kind of

7  prejudice to them.

8       So, I think at the outset there's a -- I looked at Mr. Egli

9  and Ms. Schwartz when she said it would be burdensome.  I mean,

10  it's not possible on the 15-day.  It's simply not.  But I think

11  it is possible to do it in 45 days.

12      So, we're sitting here with Dana Swisher's deposition

13  scheduled on January 31st.  We have committed to have all of

14  his documents produced, and we will have any of his privileged

15  documents by the deadline for the first tranche, so December

16  15th.  So, they have six weeks after that to provide, take

17  issue with, or anything that remains.  Most of the Swisher

18  documents have been produced but there is some trailing through

19  this privilege assessment.  So, it's going to be a very small

20  number of documents.  So, there's no conceivable prejudice for

21  the only deposition right now that's scheduled, and that's

22  January 31.

23      They used one document in Dr. Lynn's deposition, one

24  company document.  So, we're not sitting here, after all these

25  months and years of production -- to sit here and tell us that

1  there's been prejudice, I think, really misses the mark on

2  the -- and certainly so out of context in the productions here.

3  We committed on October 24th to proceed with the re-review at a

4  pace of at least 100 documents per week, and we've beaten that.

5  Every week, we've beaten that.

6      You may recall at the outset they wanted you to review

7  everything.  So, that would have been over 950 documents -- I'm

8  sorry -- over 950 privilege claims.  And now we're down to 148

9  that we've maintained.  We have never heard anything about

10  those 148.  They have those documents.  They haven't -- we

11  haven't had any, you know, more, you know, explain- --

12           **MS. SCHWARTZ:**  They have the logs.

13           **MR. O'CONNOR:**  I'm sorry.  They have the logs.

14  But there's been no further effort on that since that

15  designation.

16      We have --  The reason -- I mean, I think it's a little

17  also I say unfair to say 82 percent of these, you know,

18  privilege assertions have now been re-reviewed and withdrawn.

19  What we've done is we've said we'd agree to produce or produce

20  redacted 721 of these.  So, this review process is working and

21  it's simply there will be some additional privilege but we're

22  going to redact the documents.

23      And on this successive e-mail chain, part of that is the

24  redactions.  We're not trying to claim everything -- if there's

25  just one exchange of e-mails that's privileged, that's what

1   would be redacted, and that's what's going on, and it takes a

2   lot of review and time to do this, so --

3         THE COURT:  Why didn't you redact them in the first

4   instance?

5         MR. O'CONNOR:  I'm sorry?

6         THE COURT:  Why weren't they redacted in the first

7   instance?

8         MR. O'CONNOR:  Well, I think Ms. Donahue covered that.

9   Most of those were in that first production that was in the

10  expedited -- you know, we were working on a September, I think,

11  discovery deadline, so --

12        THE COURT:  I'm just recognizing that it's not all on

13  them.

14        MR. O'CONNOR:  No, no, no.  I'm just trying --

15        THE COURT:  Yeah.

16        MR. O'CONNOR:  -- to put it in context of the ongoing

17  effort --

18        THE COURT:  Sure.

19        MR. O'CONNOR:  -- to try to comply with the schedule

20  that we have.

21     And, again, 45 days, I think, is something that we could

22  manage because everything becomes a new priority each week this

23  case proceeds, and we can't operate that way.  We're trying to

24  comply with the 50 custodians that's underway.  It's not just

25  like we're just now doing tranche 1.  I mean, we're doing a lot

1  towards 2 and 3.  So, that's all happening.  It's fluid.  So,

2  there's just no way to do this in 15 days.

3          **THE COURT:**  I understand that you're working very hard

4  to get this done and I appreciate it.

5          **MR. O'CONNOR:**  Uh-huh.

6          **THE COURT:**  I'm trying to make sure that we can get

7  this schedule that --

8          **MR. O'CONNOR:**  Sure.

9          **THE COURT:**  -- I gave as much time as I thought we

10  could allow and that was appropriate under the circumstances

11  and I'm just trying to work backwards from that, --

12          **MR. O'CONNOR:**  Sure.

13          **THE COURT:**  -- get them the documents that they need.

14          **MR. O'CONNOR:**  Yeah.  And we are committed on Swisher.

15          **THE COURT:**  Yeah.

16          **MR. O'CONNOR:**  And it's going to be a rolling

17  production.  We're not waiting until, you know, the -- I think

18  we can produce all of these by December 31 and be in a --

19          **THE COURT:**  Swisher's first priority, though; right?

20          **MS. DONAHUE:**  Yes.

21          **MR. O'CONNOR:**  Yes.  Swisher is --

22          **THE COURT:**  So he'll be December 15th?

23          **MR. O'CONNOR:**  -- December 15th.

24          **THE COURT:**  Yeah.

25          **MR. O'CONNOR:**  And I thought I mentioned that.  But

1  we're committed to do all of this by the end of December;

2  correct?

3          MS. SCHWARTZ:  For those that we've already --

4          MR. O'CONNOR:  For those that we've already made

5  the -- so that's a deadline that we're -- and, again, it's not

6  like, December 31, here it comes.

7          THE COURT:  Sure.

8          MR. O'CONNOR:  It's going to be rolling.

9          THE COURT:  Help me understand how, if your production

10  is December 15th, I give you 45 days to produce your privilege

11  log, how they can get rulings in time to take a deposition on

12  January 31st, assuming that we're trying to get that done.  I

13  understand maybe your position is that shouldn't have to get

14  done before.

15          MR. O'CONNOR:  May I have one second?

16          MS. DONAHUE:  So the majority of the Swisher privilege

17  claims have already been asserted, --

18          THE COURT:  Uh-huh.

19          MS. DONAHUE:  -- and the Swisher production has been

20  occurring for months.  So, to the extent we have a few hundred

21  documents left, and to the extent we're going to claim

22  privilege on any of those, we can expedite that --

23          THE COURT:  Thank you.

24          MS. DONAHUE:  -- for that deposition.  But we've

25  already done the assertion on the vast majority of the

1  documents and there's not that many where there's a privilege

2  assertion.

3      And can I just address one more issue real quickly, Your

4  Honor?

5              **THE COURT:**  Yes.

6              **MS. DONAHUE:**  Because you asked us to.  On this issue

7  about the successive e-mail chain, you know, and why didn't we

8  redact that in the first place, you know, the issue of is it a

9  lawyer giving business advice versus legal advice, you know, in

10  successive e-mails is a gray area and I really feel as though

11  we shouldn't be penalized for the fact that we went back and

12  reassessed that claim, you know, and now we're redacting for

13  just that portion.

14      The re-review, it seems as though now that's being kind of

15  thrown at us like, "Look, by your own admission, you got it

16  wrong."  You know, again, this is just an example of how we are

17  trying to work through these issues with them.  So the fact

18  that we have now, you know, reassessed our position on some of

19  those and are producing them, which is that portion redacted

20  rather than withholding entirely, you know, that's a good

21  thing; right?  So, you know, when I hear things like, "By your

22  own admission," you know, this is what the process is about, a

23  meet-and-confer, adapt, adapt, adapt --

24              **THE COURT:**  Right.

25              **MS. DONAHUE:**  -- but, you know, --

1       **THE COURT:**  And let me be clear.  You will not be

2  penalized for that in any way, and I am thrilled that I am

3  going to be reviewing 150 privilege issues rather than 900.  I

4  just don't know if that is a workable process going forward for

5  every future production.  In an ideal world, you guys would

6  narrow it for me as much as you possibly could before I have to

7  make a ruling, but I've got some time limits that are important

8  to me in this case, some deadlines that I really want to keep,

9  and so I don't -- I'm not -- I am glad that you undertook that

10  process --

11       **MS. DONAHUE:**  Thank you, Your Honor.

12       **THE COURT:**  -- but yes.

13       **MS. DONAHUE:**  And I'll also say that -- I mean, we

14  have a chart that we've just been keeping internally, the

15  number of privilege assertions is greatly waning as time goes

16  by.  Number one, by virtue of the fact that the productions are

17  getting smaller; number two, by the fact that we've learned

18  things from our re-review, you know, that are now assisting us

19  to not, you know, to not make certain assertions any longer

20  through the process of the multiple people that are reviewing

21  these documents for us, you know.  By the time it gets to a

22  lawyer, you know, that's when the final call is made.  I mean,

23  the process has helped us expedite the issues, so I don't think

24  you're going to be faced with a review of hundreds of documents

25  ever from now going forward, if that's how you choose to do it.

1          **THE COURT:**  Presumably, if you had some rulings on

2    production 21 and production 28, that would further assist

3    you --

4          **MS. DONAHUE:**  I think it would.

5          **THE COURT:**  -- going forward?

6          **MS. DONAHUE:**  Yes, I think it would.

7          **THE COURT:**  Okay.

8          **MS. DONAHUE:**  It would also assist us if we talked

9    about it a little further, probably, but, you know, I

10   understand that you have a schedule and we want to adhere to it

11   as much as the court does and plaintiffs do.  If it's quicker

12   to just go straight to you with what's left, again, we're happy

13   to do that.

14         **THE COURT:**  Thank you.

15      Mr. O'Connor, you can continue.

16         **MR. O'CONNOR:**  Just to clarify, too.  On the

17   Swisher -- with respect to your question --

18         **THE COURT:**  Yes.

19         **MR. O'CONNOR:**  -- about his deposition, we would have,

20   because of the limited number of assertions and more limited

21   documents, we would have the assertion of privilege by December

22   31.  So, we would conclude Swisher production by December 15,

23   we would have any assertions of privilege by December 31.

24      And one of the reasons in this batch of documents where

25   we've maintained our privilege on 148 and we've agreed to

1   produce or produce redacted 721, the reason that we're just not

2   immediately producing all of those that we say produce is

3   because they have to be re-reviewed for other products for

4   personal information, all of the normal issues that we would

5   have to look at in the production.  So, because they were

6   withheld on privilege or work product initially, now they have

7   to be re-reviewed on that.  So that's why it's not just, "Here

8   are those documents right now."  And that's the other process

9   we're trying to conclude by December 31, as well, so that any

10  depositions that would be set in February, March or April, we

11  would then have -- we could live on a shorter time frame.

12      I think the -- I think those are the -- you know, I think

13  the court recognized that the pace of production was reasonable

14  and we're still -- you know, we're in not a fire, you know,

15  yard sale here, but we're in a real heavy, heavy resources on

16  every day by tens and tens and tens and tens of reviewers.  So,

17  it's not as if anybody has slowed down, and we commit to the

18  rolling production of all of this as it comes available.

19      Thank you.

20          **THE COURT:**  Thank you.

21      Would you like to respond to any of that, Ms. Fogleman?

22          **MS. FOGLEMAN:**  Just a couple of things.

23          **THE COURT:**  Thank you.

24          **MS. FOGLEMAN:**  Your Honor, I just wanted to respond to

25  their arguments.  On the timing, I think they've given two

1  primary issues.  Number one, Mr. O'Connor said we agreed to

2  this, we heavily negotiated this ESI protocol, and therefore

3  we're bound by it forever and ever, and I just don't think

4  they've cited anything saying you can't go back and amend or

5  modify a protocol.  The protocol itself doesn't say that.  They

6  haven't cited any authority saying, "You're forever bound by

7  it."  We think the court has complete discretion to go back and

8  modify it.

9      I mean, once you've seen how a procedure works in real

10 life, sometimes there's a need to go back and revisit it and we

11 think this is a prime example of that.

12     They also argue that they have a lot of things on their

13 plate and they should have the flexibility to do the things

14 when they allocate their resources and prioritize the tasks as

15 they see fit.

16     And I'd just like to point out the way these logs are

17 created.  These are -- my understanding, which is not -- I

18 don't have any expertise but I've talked to people who do, and

19 these are electronically produced and stored documents.  So,

20 when you -- the flagging for privilege occurs in the document

21 review process before the production.  There's a little box

22 that's checked that says "Privileged."  And then when you go to

23 generate a log, all of those -- the field -- I think -- and

24 they can correct me, I'm sure they will if I'm wrong about

25 this, but my understanding is all of the fields of the log are

1   just populated instantly and then the only thing that requires

2   lawyer -- a lawyer to do would be to go in and state the reason

3   for the privilege claim.  And my understanding from people who

4   do this a lot is that oftentimes when you're reviewing a

5   document, you might even put that in -- there's a field where

6   you can note that.

7        So, I really -- I mean, one of the things they haven't said

8   is that it shouldn't take that long to do these logs, is my

9   point, especially when you're looking at the type of numbers

10  involved here.  I mean, 17 documents, that should be done --

11  that can be done in half a day if you -- I mean, unless there's

12  some complicating factor that I'm just not seeing and that they

13  haven't mentioned here.  So we just think the timing is -- it's

14  essential that we go ahead and get this done.  We think the

15  only way that can really work is if we get these logs in a

16  timely manner.

17       And then I also wanted to respond to a couple of other

18  things that they said.  I think Mr. O'Connor, if I understood

19  him correctly, has proposed that they will agree to produce all

20  of the privileged documents that were challenged here on this

21  motion by December 31st.  I think that is just too far away.  I

22  mean, that will have been five months from the date that these

23  documents should have been produced.  And he tries to

24  distinguish between produce -- "Well, maybe they shouldn't have

25  been produced, maybe they should have been produced

In Re:  Genentech Herceptin (11-30-2017 Motion Hearing)          38

1   redacted."  We don't know.  Again, we haven't seen these

2   documents.  We don't know how many of them are going to be

3   produced in full, how many of them are going to be redacted.

4   We just don't know.  And five months to get a document that

5   shouldn't have been logged, that's for sure, because the

6   protocol doesn't require you to log redacted documents, but

7   five months to get those just seems excessive.  So, we would

8   like Your Honor to impose a deadline by which they have to turn

9   these things over.

10          **THE COURT:**  What deadline would you request for that?

11          **MS. FOGLEMAN:**  We would propose next week, the end of

12   next week, which I believe would be the -- what would that

13   be -- the 8th, --

14          **THE COURT:**  The 8th.

15          **MS. FOGLEMAN:**  -- maybe.

16      And then, again, I didn't fully understand what

17   Mr. O'Connor was proposing but he said they would get us the

18   assertions of privilege with respect to the December 15th

19   production by December 31st.  I didn't understand if that was

20   just the documents involving Mr. Swisher or if that was all of

21   the -- just the Swisher?  It was just Swisher.  And we would

22   just point out that if you don't have -- if you don't have a

23   short deadline on that, then you're looking at not getting a

24   log until February.  Again, we just don't think this can

25   continue to be a four- and five-month process.  I mean, we have

1  a document production deadline, and the final document

2  production deadline in this case is March 23rd.

3      So, if we're going to keep that deadline and keep CMO

4  number 3 as the last CMO in this phase 1, which is what I think

5  everybody in this room hopes we can do, then we're just going

6  to have to expedite this process.  And we appreciate Your

7  Honor's help in this process.

8          **THE COURT:**  What would you propose -- okay.  So, you

9  propose a December 8th deadline for production of the -- any

10  documents they're now producing upon re-review from 21 and 28?

11          **MS. FOGLEMAN:**  Yes.

12          **THE COURT:**  Is that correct?

13          **MS. FOGLEMAN:**  Either --  We would propose they either

14  produce them unredacted to us by December 8th or produce them

15  to you in camera if they're not willing to produce them to us

16  unredacted.

17          **THE COURT:**  Okay.

18          **MS. FOGLEMAN:**  And they can submit their proposed

19  redactions if they want to.

20          **THE COURT:**  Following the December 8th deadline, would

21  you request an additional deadline for you moving to compel it

22  or do you think that just prolongs the process that we already

23  know?  I mean, you've already moved to compel --

24          **MS. FOGLEMAN:**  We've already moved to compel those

25  four.

```
 1              THE COURT:  -- we already have --

 2              MS. FOGLEMAN:  Right.

 3              THE COURT:  Right.

 4              MS. FOGLEMAN:  And --

 5              THE COURT:  So the motion to compel issue is just

 6    going forward --

 7              MS. FOGLEMAN:  Right.

 8              THE COURT:  -- on future productions, --

 9              MS. FOGLEMAN:  Right.

10              THE COURT:  -- whether you're going to have a deadline

11    for that?

12              MS. FOGLEMAN:  And we would be happy to submit -- you

13    know, we've sent letters to them challenging these four

14    subsequent logs that we've received since this motion was

15    filed.  Whatever Your Honor would -- I mean, we can file a

16    motion to compel with respect to those four logs and attach

17    those.  Again, the numbers -- and I think I have them here

18    somewhere -- I think we've only challenged like something like

19    79.  Let me get the exact number for Your Honor.  It was

20    significantly smaller.  Well, it's not jumping out at me.  But

21    it was -- there were fewer than 100 documents.

22              MS. DONAHUE:  I think it's 78.

23              MS. FOGLEMAN:  78?  That sounds right.  And then I

24    think there were a handful -- there were another group about

25    that number that they had produced redacted and we had asked
```

```
 1   them for the basis for the redactions.  Because, remember, the
 2   way the protocol works is they don't have to log those but we
 3   can ask them for additional information, and they haven't
 4   provided us that yet.  So that's really going to be less than
 5   200 documents with respect to those four logs.
 6          THE COURT:  Are you of the view that if you get
 7   rulings on productions on the ones that you've already moved to
 8   compel, that there is a chance that motions to compel in the
 9   future would be reduced and --
10          MS. FOGLEMAN:  I would hope so.  I mean, the only
11   thing that gives me hesitation -- well, I do think that they've
12   already, as we've seen, the number has gone down on the
13   privilege claim.  I do think that they have -- I think the
14   re-review process, I think they're exactly right, I think
15   they've learned a lot from this.  I do think that their logs --
16   you know, their logs are getting smaller.
17          But the reason I hesitate is I don't think there's really
18   much of a disagreement as to what the law is here.  I mean, if
19   you read the briefs, there's not -- I mean, everybody seems to
20   kind of agree on what the standards are; it's just applying
21   them to the documents.  So, I don't know that they would
22   completely go away, but I do think that we've already seen
23   evidence that they're going to go down.
24          THE COURT:  Thank you.
25          MS. FOGLEMAN:  You're welcome.
```

1          **THE COURT:**  Thank you.

2          **MS. FOGLEMAN:**  Thank you.

3          **THE COURT:**  Ms. Donahue, would you like to follow up

4    on that?

5          **MS. DONAHUE:**  Just to address the next-week deadline

6    that they propose.  I feel as though if all we were doing was

7    working on the privilege log, I would agree that we can do it

8    by next week, but when you put it in context of what is going

9    to happen next week, you know, and what we're currently working

10   on through their tranches, I mean, by the December 15th

11   deadline we have, you know, the four, finishing up Swisher and

12   the three additional custodians, two of which are not in the

13   United States, we have the production of annual reports,

14   records from our complaints database.  You know, so, by

15   December 15th, there's a large volume of documents that are

16   being reviewed, collected, produced.  To add to that a

17   next-week deadline to produce the documents that we claim are

18   privileged is just -- I mean, I keep saying burdensome but I

19   don't know what other word to use.

20        And then we're also, of course, working on tranche 2

21   because that deadline is coming up really quickly at the end of

22   January and that's, you know, -- what is it -- 10 or 9 or 10

23   additional custodial files and another set of noncustodial

24   documents, including certificates of analysis which is a whole

25   other story about how much work that's going to be.  So, I

1  think our December 31st deadline that we proposed to produce

2  the remaining challenged documents is reasonable and --

3           **THE COURT:**  But that's Swisher only, the December

4  31st; is that right?

5           **MR. O'CONNOR:**  No.

6           **MS. DONAHUE:**  No, that's --

7           **THE COURT:**  I'm sorry.

8           **MS. DONAHUE:**  -- that's everything.  Everything that's

9  currently under -- everything that's been --

10          **THE COURT:**  Will you please, --

11          **MS. DONAHUE:**  -- the subject of a re-review.

12          **THE COURT:**  -- and I might be confused, articulate

13 what it is that you will do by December 31st.

14          **MS. DONAHUE:**  We will produce all the redacted and

15 nonredacted documents that we have now withdrawn or --

16 withdrawn the privilege assertion for or redacted and

17 withdrawn.

18          **THE COURT:**  From production?

19          **MS. DONAHUE:**  From all productions to date.

20          **MS. SCHWARTZ:**  21 and 28.

21          **MS. DONAHUE:**  Sorry.  From productions 21 and 28.

22          **THE COURT:**  Okay.

23          **MS. DONAHUE:**  Which are the big ones.

24          **MR. EGLI:**  And, Your Honor, we're planning to do

25 Swisher by December 15th, and out of 21 and 28, that's over 300

1  of these documents.  I don't have the exact number.  But that's

2  probably roughly half of the total that we're talking about.

3          **THE COURT:**  Okay.  So, on Swisher, we're fighting

4  about a week, and on --

5          **MR. EGLI:**  Right.

6          **THE COURT:**  -- the other ones about two weeks, and

7  I'll just -- I'll resolve that for you.

8      Okay.  Is there anything else on those first two motions,

9  Mr. -- I'm sorry -- how do you pronounce your --

10          **MR. EGLI:**  It's Egli, --

11          **THE COURT:**  Egli.

12          **MR. EGLI:**  -- Your Honor.  Thank you.

13          **THE COURT:**  Okay.

14          **MR. EGLI:**  Yeah, I was just going to mention one

15  thing.  In terms of taking the 60 days, Your Honor, you know

16  Ms. Fogleman mentioned that some of these logs are smaller in

17  like 17.  Well, part of the review process here is looking at

18  the ones that have been tagged and in some cases downgrading

19  them before they get onto the log at all and producing them.

20  So, you know, you see the end of it in 17 and you think, "Oh,

21  there are only 17 to log."  Well, what you don't see is what's

22  kind of below the surface which is all the ones that were

23  pulled down and then --

24          **THE COURT:**  Oh, I understand.  The number of documents

25  ultimately produced certainly doesn't reflect -- or the number

1  of documents for which privilege is claimed doesn't reflect

2  your work, --

3          **MR. EGLI:**  Correct.

4          **THE COURT:**  -- the totality of your work.

5          **MR. EGLI:**  Thank you, Your Honor.

6          **THE COURT:**  Thank you.

7      Okay.  Is there anything else on these procedural issues?

8          **MS. FOGLEMAN:**  No, Your Honor.

9          **MS. DONAHUE:**  No, Your Honor.

10         **THE COURT:**  Thank you.

11     Okay.  Let's move on to the motion to compel the Standard

12 Operating Procedures, and that especially is a motion that I'm

13 guessing the arguments and everything has changed a little bit

14 since we have -- since the briefs that I've read.  I really

15 want to know what if any disputes remain regarding the requests

16 from your third discovery requests.  And if you're disputing

17 specific objections that they've made, I want you to tell me

18 those in order by number so that -- I understand that perhaps

19 you've not fully met and conferred on this, but I would like to

20 know what the issues are today, if possible.  Thank you,

21 Mr. Doverspike.

22         **MR. DOVERSPIKE:**  Good morning, Judge.

23         **THE COURT:**  Good morning.

24         **MR. DOVERSPIKE:**  You're correct, we've exchanged

25 correspondence since the objections.  We received the

1   objections and we have narrowed the scope substantially.  To

2   give you an idea of some of the things we agreed on, they had

3   an objection of date range, only allowing back to 2010, and we

4   said anything that was effective in 1998 when you were actually

5   making these label determinations and manufacturing processes

6   we think are relevant to the affirmative defense, and they said

7   they would produce anything that was, I believe, effective in

8   1998, is my understanding.

9       We also agreed to limit it to Standard Operating Procedures

10  applicable to Herceptin, just something we didn't include in

11  our requests.  So we've narrowed those, they're two pretty big

12  ones.

13      I think there's a few small areas that I'm not sure if we

14  agree on or not, and Genentech might say we do so that those

15  might go away, too, but I'll just list them.

16      The first, on the dates, it's not clear to me that they

17  said they would produce anything that was dated 1998 to the

18  present, but we think any Standard Operating Procedures that

19  were in effect in '98 are relevant.  If there's a procedure

20  about how to label a lyophilized drug that was in effect then,

21  we think that would be relevant to contradicting Swisher or

22  Lynn's declarations, for example.  So, making sure that we --

23  they don't just only look to ones that were dated 1998 forward,

24  but if something was done in 1990 and was still in effect in

25  '98, that's still relevant.

1          The second is we agreed to limit it to Herceptin.  In their

2    correspondence back to us, they said they would limit it to

3    Herceptin 440 milligram vials distributed in the United States.

4    We think especially the Herceptin 150 process has been vary

5    informative about the kinds of things they could have done in

6    manufacturing that they chose not to do in the 440, so we think

7    anything that touches on especially manufacturing in the 440,

8    the 150, the 420, and we don't see for manufacturing purposes

9    why things that are distributed to other countries would be

10   irrelevant.  We're trying to discover the things they could

11   have done that would have been possible within -- without

12   changing the FDA specification range.  And so just knowing what

13   was done on 440 is not the full scope of that, so we want to

14   make sure that anything that touches on the manufacturing

15   capabilities or the labeling of any of the Herceptin products

16   is included.

17          On manufacturing specifications, we asked for any Standard

18   Operating Procedures about manufacturing specifications.  They

19   objected that that was overbroad and said that they would limit

20   it to protein content specification, the 440 milligram plus or

21   minus range.  We want to make sure that that at least includes

22   the drug substance concentration, which is one of the two large

23   determinants of how much drug ends up in the vial, and the fill

24   weight range specification.  So, we don't think limiting it

25   just to the protein content specification tells us enough.  How

1   much the drug substance that comes as a liquid in a big vat,

2   how much they put into each vial and how concentrated that is

3   are the two big variables that determine how much is actually

4   in the vial, and they have their own specification ranges, and

5   learning what those are, how they're set, how they do the

6   rounding on those are all important to contradicting Swisher's

7   declaration that it was impossible for them to comply with

8   state and federal law.

9       Fourth, the timing or deadline for this production.  As

10  usual, Genentech asks to have the last deadline, March 23rd,

11  2018, be the deadline for this production.  In CMO number 3,

12  that deadline is just for the remaining custodial files based

13  on, I believe, their testimony that going through the custodial

14  files takes a lot longer than other kinds of productions, and

15  so we put at the end the remaining, I believe, 20 or 30

16  custodial files because of how long it takes to go through.

17      The Standard Operating Procedures are kept in what they

18  call the Condor database, and they are numbered, they have a

19  title.  We've asked repeatedly to get an index that we could

20  review and just tell them, "These are the ones we want."  They

21  tell us that they're unaware of an index, is their current

22  position.  We believe that there should be a way to print out

23  an index of a numbered database and that we could look through

24  and identify them and that would be the most efficient method.

25  But we don't think it makes sense that these should be shoved

1  to the end.  We think, because of the way they're organized and

2  the way they can be reviewed, there's no reason this should

3  take three or four months.

4      Case Management Order 1 gives 15 days for responses and

5  productions of documents.  15 days has already passed.  30 days

6  has already passed.  We would like a deadline ideally with

7  tranche 1 on December 15th for producing responsive Standard

8  Operating Procedures.  That's almost two months from the time

9  we served our third discovery request.  And we were already

10 discussing these issues before that third discovery request, so

11 they've had three, four months to figure this out, and we spent

12 a lot of time fighting over whether these were responsive to

13 our first requests instead of them finding an index or locating

14 the documents.

15     And then the last issue, which I don't know if it's really

16 a dispute, but again we would be happy if they would produce an

17 index of the documents to go through and identify the ones that

18 we would like to receive, we think that would be more

19 efficient, and if they're worried about juggling too many

20 things, a much easier way for us to spend our time instead of

21 them spending their time reviewing each one deciding if it's

22 applicable to Herceptin and one of our discovery requests.

23         **THE COURT:**  Is that one of your specific discovery

24 requests, the index?

25         **MR. DOVERSPIKE:**  It is not.

1          **THE COURT:**  Okay.  Well, I operate in terms of make a

2     discovery request, they respond or they don't, --

3          **MR. DOVERSPIKE:**  Agreed.

4          **THE COURT:**  -- so --

5          **MR. DOVERSPIKE:**  That's something we offered in

6     meet-and-confer to make things --

7          **THE COURT:**  Yeah.

8          **MR. DOVERSPIKE:**  -- easier.  So, if they say that it's

9     too hard and it's going to take them four months, this is

10    something we've offered to try to take that burden off of them,

11    and we want to make the court aware of that.

12         **THE COURT:**  Understood.  Anything else?

13         **MR. DOVERSPIKE:**  Those are the five disputes that I'm

14    aware of.

15         **THE COURT:**  Okay.  Unfortunately, I'm not sure that I,

16    in issuing a ruling on this, can keep all that straight based

17    on my notes in terms of each objection.  I'll hear from

18    Ms. Donahue, but I might need something in writing now that you

19    have narrowed those issues and exchanged letters.  I'm not

20    privy to those, I'm privy to other letters, but I don't think

21    these most recent letters --

22         **MR. DOVERSPIKE:**  I do have --

23         **THE COURT:**  -- so I might need a summary if there are

24    remaining disputes.  I'd hate to have you do additional

25    briefing, I really would like to get these resolved based on

1  this hearing, but those are objections that I might need to see

2  in writing with responses, if they are real objections.

3          **MR. DOVERSPIKE:**  Of course, Your Honor.

4          **THE COURT:**  Okay.  Thank you.

5          **MS. DONAHUE:**  Thank you, Your Honor.

6          **THE COURT:**  Yes.

7          **MS. DONAHUE:**  We would appreciate the opportunity to

8  fully brief this issue.  As you saw, our response to the

9  pending motion in front of you was much based on procedure --

10          **THE COURT:**  Sure.

11          **MS. DONAHUE:**  -- and we have not had an opportunity to

12  even meet and confer since they served -- fully since they

13  served this third set of discovery which was served on October

14  18th.

15          **THE COURT:**  So you have not met and conferred

16  regarding the --

17          **MS. DONAHUE:**  To a limited extent.  But, you know, we

18  have produced -- we have started production of Standard

19  Operating Procedures --

20          **THE COURT:**  Yes.

21          **MS. DONAHUE:**  -- since we were last here and since we

22  received the discovery, and we will continue to produce those

23  on a rolling basis.

24      This Condor database is not limited to Standard Operating

25  Procedures, is not limited to Herceptin, there is no index.

```
 1  The search capability in it is challenging.  We have been
 2  conducting multiple interviews in order to, you know, kind of
 3  figure out how we can get to this limited set of Standard
 4  Operating Procedures.  Their timing on this, back to 1998, you
 5  know, the way Standard Operating Procedures works, as the
 6  current ones are the current ones and those are there, but to
 7  go back 20 years and try to find what Standard Operating
 8  Procedures were in effect on this overbroad request -- I mean,
 9  the level of Standard Operating Procedures includes things
10  like, "Here's how you put on your gown."  So, they're request
11  is give them the Standard Operating Procedures related to the
12  manufacturing process.  Okay?  An example of one of the
13  hundreds that there probably are would be how to put on a gown
14  to be part of the assembly line for Herceptin in a sterile
15  environment.  And do they really need that?
16          THE COURT:  Well, I think that's why they're saying if
17  you give them an index, --
18          MS. DONAHUE:  We don't --
19          THE COURT:  -- they'll tell you what they really need.
20          MS. DONAHUE:  There is no index.  We've told them
21  there is no index.  Just because these are -- somebody numbers
22  some of these Standard Operating Procedures, the ones that
23  we've produced have numbers on them.  Those numbers, I mean,
24  we'd love it if we could make it that simple for ourselves.
25  We'd love to see an index.  It doesn't exist.
```

1              **THE COURT:**  Okay.

2              **MS. DONAHUE:**  So the process of going through this

3     database and locating what they want us to locate is, again, a

4     time consuming process and we can't help that.

5          So, you know, I would love the opportunity to fully brief

6     it because me sitting up here and telling you this, you know,

7     is one thing, but the issue isn't -- I don't think is not an

8     appropriate one to deal with on the fly like this for me.  We

9     didn't expect to fully argue about the Standard Operating

10    Procedure level of production, and I think part of our

11    opposition will be we would like them to kind of -- to try to

12    reasonably articulate, for instance, what Standard Operating

13    Procedures they need for the manufacturing process because, as

14    I've explained, there's, you know, a whole bunch of them, and

15    this timing of 1998, you know, their statute runs -- starts --

16    it's 2010 is where we've limited other productions by

17    agreement.  So, why do we need to go back to 1998?  I mean, --

18             **THE COURT:**  So you have not agreed to go back to 1998?

19             **MS. DONAHUE:**  We're currently operating in good faith

20    under their -- under their current request.  We haven't agreed

21    to do it but we're doing it.  But have we produced anything

22    back from 1998?  No.  We don't even know if we can locate it.

23    We're agreeing to look for it basically at this point.  But if

24    we're going to have a real motion about this third set of

25    discovery, which I think we should, you know, we probably would

```
 1   ask for a ruling of the court on that issue.
 2       But as it currently -- what we're currently doing is
 3   operating under good faith to produce Standard Operating
 4   Procedures pursuant to their third set of -- their third set of
 5   discovery.  Once they get that production, and it will be -- I
 6   mean, it's going to be at the end of the tranche 3 because
 7   that's how long it's going to take.  I can't help that.
 8            THE COURT:  So your proposal is for production of the
 9   SOPs would be March 23rd?
10            MS. DONAHUE:  Right.
11            THE COURT:  Okay.
12            MS. DONAHUE:  Complete.  We'll do it on a rolling
13   basis but it will be completed by the end.
14            THE COURT:  What time frame do you feel is appropriate
15   on a motion to compel on that issue?  Are you fairly close to
16   having -- if I require him to file another motion to compel on
17   this -- he already has a motion to compel by the deadline that
18   I set, --
19            MS. DONAHUE:  Uh-huh.
20            THE COURT:  -- and I understand that perhaps that
21   deadline does not allow you time to do the things that you
22   needed to do.  If I require him to file another motion to
23   compel, how long do you need before you feel like that could be
24   worked out?  What would be your proposal?
25            MS. DONAHUE:  So, if Mr. Doverspike was to file a
```

1   motion to compel setting forth I think it was the four or five

2   issues?

3          **THE COURT:**  If you guys fully disagree on those.

4          **MS. DONAHUE:**  Okay.  Which I'd like a little more time

5   to talk to them about --

6          **THE COURT:**  Uh-huh.

7          **MS. DONAHUE:**  -- because our investigation on this

8   database and on the SOPs is a continuing one, as I've --

9          **THE COURT:**  Yes.

10         **MS. DONAHUE:**  -- described.  So, if they were to file

11  one -- I think under your current deadline we have 15 days to

12  oppose; right?  Isn't that how the current schedule works?

13         **THE COURT:**  I think it's -- yes, basically.  18 with

14  mailing, I think.

15         **MS. DONAHUE:**  We would comply with that deadline.

16         **THE COURT:**  Mr. Doverspike, what would you propose?

17         **MR. DOVERSPIKE:**  I'm sorry.  What was the question,

18  Your Honor?

19         **THE COURT:**  What would you propose -- if I require you

20  to file a motion to compel, what would you want the deadlines

21  to be?

22         **MR. DOVERSPIKE:**  We can do it by Friday.

23         **THE COURT:**  And then I'm assuming you would want an

24  expedited response?

25         **MR. DOVERSPIKE:**  We would like these as soon as

1    possible.

2            **THE COURT:**  Okay.  I don't have any further questions

3    on that issue.  Do you all have anything else you'd like to

4    add?  Would you like to respond?

5            **MR. DOVERSPIKE:**  Yes, Your Honor.

6            **THE COURT:**  Thank you.

7            **MR. DOVERSPIKE:**  I would like to respond to a couple

8    of things.

9        So the record's straight, first, as we mentioned in our

10   motion, when the FDA asked them to put together an index of

11   Standard Operating Procedures as part of a review of one of

12   their manufacturing sites, they were able to do that

13   expeditiously.  We think they have the capability to do it;

14   it's a question of willingness.

15       But a couple of things I wanted to make sure were clear.  I

16   have copies of the last two letters that we exchanged I'd like

17   to give to the court or attach to the motion as required.

18           **THE COURT:**  I have reviewed some letters, but these

19   are not those?

20           **MR. O'CONNOR:**  What are the dates?

21           **MR. DOVERSPIKE:**  The first letter is one from Dave

22   Keglovits on November 13th.

23           **MS. DONAHUE:**  And our response is November 21st, and

24   we've never received a response back to our response.

25           **MR. DOVERSPIKE:**  And the second is the November 21st

1  letter from Ms. Schwartz.

2      The first thing I'd like to direct your attention to on the

3  November 21st letter, on the first page under request number 1,

4  "Date Limitation, Genentech is willing to produce responsive

5  SOPs dating back to 1998 to the extent they can be found and

6  the process does not become unduly burdensome."  So I was under

7  the impression we had agreed at least that those had been

8  agreed to and the only dispute was whether it was ones that

9  were effective that date or dated that date.  We believe

10  anything that was effective that date is relevant and

11  responsive.

12      Next, Ms. Donahue said no indices exist.  In our motion we

13  cited to an index we found going through their documents but we

14  only cited to the first page.  I'd like to hand up the full

15  document, which is Bates labeled GENE-DSWI000064988.  This is

16  titled, "The Herceptin PHF Index," and it lists a number of

17  GSPs and SOPs related to Herceptin.  It's a large document and

18  I don't expect us to go through it all, but if you turn past

19  the first green page, there's a page that the top left is

20  described as, "Product Information," and at the bottom it says,

21  "Page 1 of 2," right after the first green divider page.

22          THE COURT:  After the first green page?

23          MR. DOVERSPIKE:  Yes.  It's a horizontal chart, like

24  an Excel --

25          THE COURT:  This (INDICATING)?

1      **MR. DOVERSPIKE:**  Yes.  And you'll see the first row --

2   the document title is, "Trastuzumab Version 1.1 Drug Substance

3   Manufacturing Process Parameters," for example.

4      **THE COURT:**  Okay.

5      **MR. DOVERSPIKE:**  Well, that hasn't been produced to

6   us, and most of these haven't been produced to us even though

7   we've been talking about this for three months and they've had

8   this document and we attached and cited to it in our motion.

9   This is our problem, is that we get into fights, first over

10  whether something is responsive, and then how long it's going

11  to take.  And even when we go through their documents and find

12  something like an index or an org chart, we have to give it to

13  them and say, "Here it is."  And so it's a frustrating process

14  for us to then hear it's going to take them until March to find

15  these.  There's no reason every SOP in this document that is

16  responsive to our request shouldn't have already been produced.

17  And that's the kind of deadline problems we have, is they

18  always want -- if you give them 60 days for a priv log, even if

19  there's 17 documents, they're going to take 60 days.  And we

20  would like these sooner.  We've done the work to go find

21  indices even though they told us they didn't exist and give

22  them to them, and we still aren't getting productions of those

23  documents.

24      **THE COURT:**  Is what you're referring to on that first

25  line a Standard Operating Procedure, or are you saying that's

1  responsive to a different --

2          **MR. DOVERSPIKE:**  I believe it is --

3          **THE COURT:**  -- request?

4          **MR. DOVERSPIKE:**  -- but it's not clear to me what

5  they're called.  But if you go down two more from that one, the

6  source location is Condor, and it's also parameters, and it's a

7  GPR.  I mean, this has been a lot of our frustration, is trying

8  to understand their document process and how they hold

9  documents, where things are, what things are.

10     We asked to depose their record keeper and they resisted

11  that successfully.  We asked for their databases, and Judge

12  Wilson said tell us the universe of documents.  They only told

13  us a couple of databases and it took them a year, for example,

14  for them to identify Condor as even a place that has responsive

15  material.  So, we're still trying to figure that kind of thing

16  out, what each of these acronyms mean, but there are a lot of

17  GSPs and SOPs, which are their standard procedures throughout

18  the documents.

19          **THE COURT:**  And obviously the things that are .SOP,

20  I've seen those attached to your motion, and those would appear

21  to be Standard Operating --

22          **MR. DOVERSPIKE:**  Yes.

23          **THE COURT:**  -- Procedures with a number.  This is not

24  clear to me that what you're referring to -- as clear to me

25  anyway, as the things that have "SOP" in the title.  Is it your

In Re:  Genentech Herceptin (11-30-2017 Motion Hearing)                    60

1   position that those are not Standard Operating Procedures that

2   would be, Ms. Donahue or Ms. Schwartz?  Do you know?

3           **MS. DONAHUE:**  Well, Your Honor, at this point we don't

4   know.

5           **THE COURT:**  Okay.

6           **MS. DONAHUE:**  This is the first time we've been

7   provided this document by the plaintiffs.  It's not an index.

8   It's something called a Product History File.  We have not

9   looked at every document in this index -- or I mean in this

10  history file and we haven't been asked to.

11      If the plaintiffs would like to go through this document

12  and tell us which of these they would like us to produce, we

13  could start talking about that.  I mean, this is the first time

14  this has been brought to our attention.  It's not an index.  I

15  don't think this should be waved in front of us.  But about my

16  credibility about saying we don't have an index, this isn't an

17  index.  I don't know what each of these documents are.  They

18  haven't looked at them.

19          **THE COURT:**  Well, this sure seems like a good start

20  for you, to be able to look at and decide or say, "Where's

21  this?  Is this a Standard Operating Procedure?  Is this

22  something we should produce?"  But --

23          **MS. DONAHUE:**  And that's what we're -- and that's what

24  we're doing.

25          **THE COURT:**  Yeah.  So, I mean -- but that's really not

1  their job to have to give this back to you and point it out.

2  But the fact that they are should expedite the process --

3        **MS. DONAHUE:**  Right.

4        **THE COURT:**  -- is all I'm saying.

5        **MS. DONAHUE:**  And if there's certain descriptors on

6  this list that they would say, "We would like that document,

7  we'd like that document," we'll give it to them.  But, you

8  know, we're doing just that -- I mean, what I said we're doing,

9  we're going through, we're locating Standard Operating

10 Procedures, we're producing them, we have started producing

11 them.  But this isn't an index of Standard Operating

12 Procedures.

13       **MR. DOVERSPIKE:**  Your Honor, what we would ask, as

14 part of any order, and we'll put this into writing again, like

15 with the organizational charts when they said none exist, once

16 an order from the court said to go find them, they found them.

17 So we'd like, at least if we can find indices, we think if you

18 order them to find indices, they will be able to do it and they

19 will turn them over.  And when they say there aren't any, it's

20 hard for us to trust that.

21       **THE COURT:**  When you say you found an index, I'm

22 trying to understand.  Do you consider this -- I haven't had

23 time to review this document --

24       **MR. DOVERSPIKE:**  Sure.

25       **THE COURT:**  -- they just handed up, but I was

1   considering an index of Standard Operating Procedures something

2   that had them listed by number.  How is this an index?

3          **MR. DOVERSPIKE:**  Ideally, a complete index of the

4   entire database of Standard Operating Procedures would be the

5   thing that either of us should have and be able to look through

6   to decide what's responsive, and we think that exists or could

7   be created in the way records are generally kept in a numbered

8   database.  This is not that.  This, somebody put together all

9   of these things that relate to Herceptin, including Standard

10  Operating Procedures and General Standard Practices.  You know,

11  if they had given us this and said, "Here, which ones do you

12  want," it would have sped up the process a lot.  We had to go

13  find it, their document, and we did, we cited to this in the

14  motion.  This is not new to them.  We didn't attach the whole

15  thing because it's actually -- it's the large size spreadsheets

16  that getting into PDF form is difficult and that's why I wanted

17  to hand it up today.

18     The last thing I want to make sure that on the record is

19  clear, we did meet and confer on a teleconference after we

20  filed our motion.  We had previously discussed Standard

21  Operating Procedures, we had mentioned it at the October 10th

22  hearing.  We only filed that motion to moot one of the

23  objections they were making, the only objection they were

24  making at the time.  And after that, about three days after, we

25  had a meet-and-confer teleconference, we discussed things like

 1  what date range, whether it would be limited to Herceptin,

 2  those types of issues.  So, I just want to make clear that we

 3  did have a discussion on these issues before we filed.

 4          **THE COURT:**  Yes.  I appreciate that.  Thank you.

 5          **MR. DOVERSPIKE:**  That's all I have.

 6          **THE COURT:**  Okay.  Thank you.

 7          **MS. DONAHUE:**  May I have one more word, please?

 8          **THE COURT:**  Yes.

 9          **MS. DONAHUE:**  Thank you.

10      I think maybe I'm a little confused about what we're

11  arguing about, because I think what we're arguing about is

12  how -- is the timing on our production of Standard Operating

13  Procedures, I think, because based upon the letters that

14  Mr. Doverspike just handed up, we're in the meet-and-confer

15  process about this, and what we've agreed to do in that letter,

16  we've agreed to do and we're doing.  To expect it to be done on

17  an expedited basis, again, it's the same story with everything.

18  "Yes, and do it quickly; yes, and do it quickly; yes, and do it

19  quickly."  We have a schedule that we are complying with.

20      We're here in front of you and we came up and you gave us a

21  schedule and that's the schedule we're operating under.

22  Everything now seems like not quick enough, not quick enough.

23  It is what it is.  I mean, we're in this, a very broad, very

24  large discovery situation and we're doing it and we're going to

25  do it within the deadlines that you set for us.  But, you know,

1   to keep -- this is new discovery that was just served after the

2   last hearing and they want our response yesterday.  Well, it's

3   just -- I don't know, I don't know.

4      So I think what we're arguing over at this point is the

5   timing of the production of the SOPs.  If it's more than that,

6   we would like an opportunity to brief it.  If that's what it

7   is, our position would be that we will continue to produce them

8   on a rolling basis as we locate them within the discovery

9   deadline that's been set by the court.

10          **THE COURT:**  Thank you.

11          **MS. DONAHUE:**  Thank you.

12          **THE COURT:**  Okay.  Is there anything else that the

13  parties would like to address today?  I haven't heard from you,

14  Mr. Keglovits.  You're unusually quiet.

15          **MR. KEGLOVITS:**  I have nothing interesting to say.

16          **THE COURT:**  How many times can we recycle that joke?

17          **MR. O'CONNOR:**  It's been --

18          **THE COURT:**  Is there anything further?

19          **MR. O'CONNOR:**  -- kind of pleasant.

20          **THE COURT:**  What?

21          **MR. O'CONNOR:**  It's been kind of pleasant.

22          **THE COURT:**  Anything further from the defendants?

23          **MS. DONAHUE:**  No, Your Honor.  Thank you very much.

24          **THE COURT:**  Yes.  Thank you.

25      I'm going to issue a written order on these issues.  I'm

1   going to try to do it as quickly as I can.  I would like you --

2   Mr. Doverspike, I'm on this motion to compel the Standard

3   Operating Procedures.  I am prepared today, or in this order

4   that's going to be issued, to issue a ruling on timing and

5   when.  I feel like that should be done.  I don't feel like I'm

6   prepared to fully issue a ruling on the specific objections

7   that have been discussed, the five things.  So -- but I'm not

8   going to issue a ruling on timing until I fully understand the

9   scope of the dispute.  So, to the extent that you need to file

10  a motion to compel, I'm going to give you a deadline for that.

11  Does that make sense?

12           **MR. DOVERSPIKE:**  Yes, Your Honor.

13           **THE COURT:**  Okay.  And that will be in this order that

14  comes out on the motion to modify and I'm going to set forth a

15  procedure that we're going to follow.

16       What I would like from the plaintiffs is, as we discussed,

17  something similar to the hearing exhibit that sets forth the

18  privilege log, production number, and the date the privilege

19  log was produced, but I want that to also include any other

20  productions and what would be the 60-day projected deadline for

21  their privilege log, so that if I end up shortening that time

22  frame, I will know what I'm ordering them to do and whether

23  it's reasonable or not, and I might adjust it based on when

24  that production occurred and how much time they've currently

25  had.

1      Do you understand the type of chart that I'm requesting?

2           **MS. FOGLEMAN:**  I understand completely.  I just had

3   a -- I think that Ms. Donahue said there were 11 logs that

4   would be required, so that would be three more.  I'm trying to

5   understand, because not every production has privileged

6   documents withheld from it, so I was wondering if it would be

7   helpful if we worked with them to identify -- you don't need a

8   list of every production if it doesn't have a log associated

9   with it?

10          **THE COURT:**  That's correct.

11          **MS. FOGLEMAN:**  So maybe we could work with them to get

12   the dates of those productions that will have logs?  Is that

13   something you all can provide?

14          **MS. DONAHUE:**  Sure.

15          **THE COURT:**  That would be great.  What day -- how long

16   do you need to produce that?

17          **MS. FOGLEMAN:**  I think we could probably do it

18   tomorrow if you all can --

19          **MR. EGLI:**  It's 45, 47 and 48.

20          **MS. FOGLEMAN:**  Okay.  That's perfect.  So we can get

21   that to you maybe at close of business tomorrow.

22          **THE COURT:**  That would be great.  Please --

23          **MR. EGLI:**  45, 47 and 48.

24          **THE COURT:**  Please get that to me by close of business

25   tomorrow.

1          **MS. FOGLEMAN:**  Or maybe even today.  We'll shoot for

2   it.

3          **THE COURT:**  That would be great.

4      Okay.  Thank you all so much.  Court is adjourned.

5          **THE DEPUTY COURT CLERK:**  All rise.

6      (PROCEEDINGS CLOSED)

7                      **REPORTER'S CERTIFICATION**

8      WHILE NOT PRESENT IN PERSON TO STENOGRAPHICALLY REPORT THE

9   FOREGOING PROCEEDINGS, I CERTIFY THAT IT WAS TRANSCRIBED TO THE

10  BEST OF MY ABILITY FROM A DIGITAL AUDIO RECORDING.

11

12                     CERTIFIED:   *s/Greg Bloxom*
                                    Greg Bloxom, RMR, CRR
13                                  United States Court Reporter
                                    333 W. 4th Street, RM 411
14                                  Tulsa, OK 74103
                                    (918)699-4878
15                                  greg_bloxom@oknd.uscourts.gov

16

17

18

19

20

21

22

23

24

25